## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SKYLINE TRUCKING, INC.,**<br><br>            **Plaintiff,**<br><br>**v.**<br><br>**FREIGHTLINER TRUCK CENTER COMPANIES, TRANSWEST TRUCK TRAILER RV, and DAIMLER TRUCK NORTH AMERICA LLC,**<br><br>            **Defendants.** | **Case No. 22-4052-DDC-TJJ** |

## <u>MEMORANDUM AND ORDER</u>

This Order addresses two motions brought by separate defendants in this action.  Plaintiff Skyline Trucking, Inc. initially brought this case in the District Court of Saline County, Kansas, alleging multiple claims against three defendants:  Truck Center Companies ("Truck Center"—incorrectly called Freightliner Truck Center Companies in some filings), Transwest Freightliner, LLC ("Transwest"—identified as Transwest Truck Trailer RV in some filings), and Daimler Truck North America LLC ("DTNA").  Plaintiff brings claims against all three defendants for negligence (Count I), breach of contract (Count II), breach of the duty of good faith and fair dealing (Count III), negligent misrepresentation (Count V), and civil conspiracy (Count VI).  Doc. 1-1 at 6–10 (Pet. ¶¶ 33–47, 58–67).  Plaintiff also alleges fraud (Count IV) against defendant Truck Center, but only that defendant.  *Id.* at 8–9 (Pet. ¶¶ 48–57).

Defendant Truck Center removed the action to our court last fall.  Doc. 1.  Defendant Transwest then filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) and (3).  Doc. 13.  Plaintiff responded (Doc. 26) and defendant Transwest replied (Doc. 36).  Separately, defendant DTNA filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) and (6).  Doc. 33.  Plaintiff

responded (Doc. 39) and defendant DTNA replied (Doc. 42).  Thus, the parties have briefed both motions fully.

Plaintiff Skyline is a corporation incorporated under Georgia law, and its principal place of business is in the same state.  Doc. 17 at 2; Doc. 1 at 2 (Notice of Removal ¶ 3).  Defendant Truck Center is a corporation incorporated under Nebraska law with its principal place of business there as well.  Doc. 17 at 2; Doc. 1 at 2 (Notice of Removal ¶ 4).  Defendant Transwest is a Colorado limited liability company.  Doc. 17 at 2.  Its sole member is a corporation incorporated under Colorado law with its principal place of business in Colorado.  *Id.*  Defendant DTNA is a Delaware limited liability company.  *Id.*  Its sole member is Daimler Truck & Buses US Holding, L.L.C. (DTB), a Delaware limited liability company with its principal place of business in Oregon.  *Id.*  DTB's sole member is a publicly traded corporation incorporated under German law with its primary place of business in that country.  *Id.*  Defendant Truck Center asserts diversity jurisdiction exists under 28 U.S.C. § 1332.  Doc. 1 at 1 (Notice of Removal ¶ 1).  Plaintiff claims more than $75,000 in damages, so the court concludes plaintiff is diverse from all defendants and thus exercises its diversity jurisdiction.

The court grants in part and denies in part defendant DTNA's motion (Doc. 33), and it grants in part and denies in part defendant Transwest's motion (Doc. 13).  The court explains these conclusions, below.

## I.      Background

The following facts come from plaintiff's initial Petition filed in the District Court of Saline County, Kansas (Doc. 1-1) (attached to the Notice of Removal).  The court accepts plaintiff's "well-pleaded facts as true, view[s] them in the light most favorable to [it], and draw[s] all reasonable inferences from the facts" in plaintiff's favor.  *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023) (quotation cleaned up).

In June 2020, plaintiff began experiencing problems with its truck as it passed through Kansas while fulfilling a shipping contract.  Doc. 1-1 at 3–4 (Pet. ¶¶ 9–10).  Plaintiff took its truck to defendant Truck Center's shop for repair.  *Id.* at 4 (Pet. ¶ 11).  A few days later, defendant Truck Center informed plaintiff that it had completed the repairs, and plaintiff paid $11,750 for defendant's services.  *Id.* (Pet. ¶¶ 12–13).  Plaintiff then resumed the truck's route but continued to experience problems.  *Id.* (Pet. ¶¶ 13–14).  Plaintiff reported these problems to defendant Truck Center, who told plaintiff that the problem would resolve itself and that defendant had repaired the truck.  *Id.* (Pet. ¶¶ 15–16).

The day after defendant Truck Center had returned the purportedly repaired truck to plaintiff, the truck's engine seized while driving through Colorado, leaving it inoperable.  *Id.* (Pet. ¶ 19).  Plaintiff had the truck towed to defendant Transwest's shop and arranged for another driver in a different truck to complete the delivery contract it was performing.  *Id.* at 5 (Pet. ¶¶ 22–23).  Plaintiff advised defendant Transwest about the truck's recent repair by defendant Truck Center.  *Id.* (Pet. ¶ 25).  Then, plaintiff didn't hear from defendant Transwest for several days.  *Id.* (Pet. ¶ 26).  During that time, plaintiff learned that defendant Transwest had removed the engine head of the truck without notifying or securing permission from plaintiff.  *Id.* (Pet. ¶ 27).  Plaintiff then complained to defendant DTNA.  *Id.* (Pet. ¶ 28).  Unable to resolve the truck's problems satisfactorily, plaintiff filed this action in state court.  Defendant Truck Center removed it.  *See* Doc. 1.  And now, the other two defendants have filed separate Motions to Dismiss.  Docs. 13, 33.

The court addresses each of these motions in separate sections, below.  Part II discusses defendant DTNA's Motion to Dismiss (Doc. 33), providing the legal standard and addressing each of its arguments separately.  Next, in Part III, the court discusses defendant Transwest's

Motion to Dismiss (Doc. 13), again providing the relevant legal standard before turning to the parties' arguments.

## II.      Defendant DTNA's Motion to Dismiss (Doc. 33)

Defendant DTNA's motion asserts two separate grounds for dismissal.  *First*, DTNA argues that the court lacks personal jurisdiction over it.  *Second*, DTNA argues that the Petition fails to state a claim on which the court may grant relief.  For reasons explained below, the court grants in part and denies in part defendant DTNA's motion.

### A.  Personal Jurisdiction (Fed. R. Civ. P. 12(b)(2))

#### 1.  Legal Standard

Rule 12(b)(2) of the Federal Rules of Civil Procedure governs motions to dismiss for lack of personal jurisdiction.  Plaintiff—the party claiming jurisdiction—bears the burden to establish personal jurisdiction over each defendant named in the action.  *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 964 (10th Cir. 2022) (citation omitted).  But in the preliminary stages of litigation, a plaintiff's burden to establish personal jurisdiction is light.  *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008) (citation omitted).

Where a defendant asks the court to dismiss by a pretrial motion to dismiss and without conducting an evidentiary hearing—as is the case here—plaintiff must make only a prima facie showing of jurisdiction.  *Eighteen Seventy*, 32 F.4th at 964 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)).  In that setting, plaintiff can make the requisite showing and thus "defeat a motion to dismiss by presenting evidence—either uncontested allegations in its complaint or evidence in the form of an affidavit or declaration— 'that if true would support [exercising] jurisdiction over the defendant.'"  *Id.* (quoting *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020)).

A defendant may "defeat [a prima facie showing of] jurisdiction by presenting a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *XMission*, 955 F.3d at 840 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  When a defendant fails to controvert plaintiff's jurisdictional allegations with affidavits or other evidence, the court must accept the well-pleaded allegations in the complaint as true and resolve any factual disputes about jurisdiction in plaintiff's favor.  *Eighteen Seventy*, 32 F.4th at 964 (citing *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).  In a diversity action like this one, plaintiff must show that exercising jurisdiction is proper under both the forum state's long-arm statute and the Fourteenth Amendment's due process clause.  *Eighteen Seventy*, 32 F.4th at 965 (citations omitted).  Kansas construes its long-arm statute liberally, permitting any exercise of jurisdiction under it that comports with the Constitution of the United States.  *OMI Holdings*, 149 F.3d at 1090 (citation omitted); *see also* Kan. Stat. Ann. § 60-308(b)(1)(L) & (b)(2).  Thus, it's unnecessary to conduct a separate state law analysis and, instead, the court may proceed directly to the due process inquiry.  *Federated Rural Elec. Ins. v. Kootenai Elec. Co-op.*, 17 F.3d 1302, 1305 (10th Cir. 1994); *see also Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (explaining that when state's long-arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause . . . the first, statutory, inquiry effectively collapses into the second, constitutional, analysis" (quotation cleaned up)).

The due process analysis involves a two-step inquiry.  *First*, "the [defendant's] contacts with the forum State must be such that the defendant should reasonably anticipate being haled into court there."  *XMission*, 955 F.3d at 839 (quotation cleaned up).  This part of the inquiry is typically called the "minimum contacts" requirement.  *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (holding that "in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it").  *Second*, if defendant's actions establish such minimum contacts, the court then must decide whether having to defend a lawsuit there wouldn't "offend traditional notions of fair play and substantial justice."  *XMission*, 955 F.3d at 839 (quotation cleaned up).

a.   Minimum Contacts

The Due Process Clause permits a state to assert personal jurisdiction over a nonresident defendant so long as the defendant purposefully has established "minimum contacts" with the forum state.  *Burger King*, 471 U.S. at 474.  Plaintiff may satisfy the "minimum contacts" requirement either by establishing (1) general jurisdiction or (2) specific jurisdiction.  *XMission*, 955 F.3d at 840 (citation omitted).  A court may assert general jurisdiction over a nonresident defendant "if its contacts with the State are so continuous and systematic that the person is essentially at home in the State."  *Id.* (quotation cleaned up).  Specific jurisdiction "allows a court to exercise jurisdiction over an out-of-state defendant only for claims related to the defendant's contacts with the forum State."  *Id.* (citation omitted).  Plaintiff's arguments here rely solely on the general jurisdiction prong, *see* Doc. 39 at 7–11, so the court confines its analysis accordingly.

General jurisdiction doesn't rely on the case-specific contacts with the state; instead, general jurisdiction often relies on the defendant's business contacts with the forum state generally.  *OMI Holdings, Inc.*, 149 F.3d at 1091 (citation omitted).  But, because general

jurisdiction isn't confined to the particular events instigating the lawsuit, courts must "impose a more stringent minimum contacts test" before asserting general jurisdiction, one that "requir[es] the plaintiff to demonstrate the defendant's continuous and systematic general business contacts" with the forum state. *Id.* (quotation cleaned up).

When evaluating a business entity's contacts with the forum state for this analysis,

> courts have considered such factors as: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Trierweiler v. Croxton Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996) (citation omitted).

### b.  Fair Play and Substantial Justice

Even if defendant's actions establish sufficient minimum contacts and justify personal jurisdiction, courts still must decide whether exercising "personal jurisdiction would offend traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1080 (quotation cleaned up).  It's a "rare" case when a defendant meets the minimum contacts test but asserting jurisdiction would offend fair play and substantial justices. *Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013).  This elevated standard means the "defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477).  To determine whether exercising jurisdiction is unreasonable under this standard, courts consider these five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*OMI Holdings, Inc.*, 149 F.3d at 1095 (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987)).

*2.  Analysis*

Plaintiff bears the burden to show that DTNA "should reasonably anticipate being haled into court" in the District of Kansas by showing that defendant's "contacts with [Kansas] are so continuous and systematic that the [defendant] is essentially at home" here. *XMission*, 955 F.3d at 839–40 (quotations cleaned up).  DTNA is a Delaware limited liability company with its principal place of business in Oregon.  Doc. 17 at 2.  Since neither DTNA's place of incorporation nor its principal place of business is here in Kansas, plaintiff must establish the minimum contacts necessary for the court to exercise general personal jurisdiction.

Plaintiff argues that the court "can exercise [personal] jurisdiction over DTNA because of its substantial, continuous contact with Kansas[.]"  Doc. 39 at 10.  Specifically, plaintiff contends DTNA "has already consented to such jurisdiction through its registration to do business in Kansas."  *Id.*  According to plaintiff, Kansas has general jurisdiction over DTNA because it registered to do business in Kansas, and the state's registration statute required DTNA to consent to general jurisdiction in the state.  *Id.*; *see also* Kan. Stat. Ann. § 17-7931 (requiring foreign entities to register with Secretary of State before doing business in Kansas and requiring, as part of this registration, that the entity issue an irrevocable written consent that parties may commence actions against it in the proper court of any county where venue is proper).  DTNA disputes plaintiff's position, arguing that the Kansas statute can't confer general personal jurisdiction over it based on the Supreme Court's rationale in *Daimler AG v. Bauman*, 571 U.S. 117, 137–38 (2014).  DTNA reports that *Daimler* "expressly rejected business contacts as a basis for exercising general jurisdiction over a defendant[.]"  Doc. 42 at 3.

8

Plaintiff responds with *Butler v. Daimler Trucks N. Am., LLC*, 433 F. Supp. 3d 1216 (D. Kan. 2020) as support for its position.  In *Butler*, our court addressed the consent-by-registration statute and concluded that this very same defendant—DTNA—was subject to general personal jurisdiction here.  *Butler*, 433 F. Supp. 3d at 1236–38.  DTNA argued in *Butler* that the Supreme Court's "*Daimler AG* [decision] substantially narrowed the reach of general personal jurisdiction such that a corporate defendant will normally only be subject to general jurisdiction in its place of incorporation and [principal] place of business," and "that *Daimler AG* is inconsistent with general jurisdiction based on consent-by-registration."  *Id.* at 1237.  Our court was "unpersuaded[.]"  *Id.*  It reasoned that "the Tenth Circuit has historically followed the practice of determining whether a foreign corporation's registration to do business constitutes consent by reference to the state statute governing such issue or, in some instances, case law constructing that statute."  *Id.* at 1236–37.  And, this court concluded, the "Kansas Supreme Court's most recent decision on the issue, *Merriman v. Crompton Corp.*, [146 P.3d 162, 171 (Kan. 2006),] held that the foreign corporation registration statute also required those foreign corporations to expressly consent to general personal jurisdiction."  *Id.* at 1237.  Because personal jurisdiction is "first of all an individual right" that "can, like other such rights, be waived[,]" *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982), *Butler* held that "the authoritative weight of the Kansas Supreme Court's decision in *Merriman*," combined with DTNA's decision to register its business in Kansas, means it "has consented to general personal jurisdiction in Kansas[,]" *Butler*, 433 F. Supp. 3d at 1237.[1]

---

[1]     The Kansas Supreme Court hasn't reversed *Merriman* or otherwise altered its holding.  In fact, it's applied *Merriman*'s reasoning on consent to personal jurisdiction even beyond the scope of corporations.  *See In re Marriage of Williams*, 417 P.3d 1033, 1038–39 (2018) (holding that "a party can agree to personal jurisdiction by consent, including through constructive or implied consent such as waiver by failing to object" (citing, among others, *Merriman*, 146 P.3d at 162)); *see also id.* at 1039 ("In addition to these statutory grounds for jurisdiction, caselaw allows a Kansas court to exercise jurisdiction

DTNA recognizes that "this district [has] held that registering to do business in Kansas amounts to consent to jurisdiction."  Doc. 42 at 3.  But DTNA doesn't concede the point, citing out-of-circuit decisions and arguing that consent-by-registration "'rests on uneasy ground.'" Doc. 42 at 3 (first quoting *Avery v. TEKsystems, Inc.*, No. 22-cv-02733-JSC, 2022 WL 3998499, at *5 (N.D. Cal. Aug. 31, 2022); then citing *Mallory v. Norfolk S. Ry.*, 266 A.3d 542 (Pa. 2021), *cert. granted*, 142 S. Ct. 2646 (2022)).  *Butler* is part of a line of cases from our court "holding that consent-by-registration did survive *Daimler AG*."  *Butler*, 433 F. Supp. 3d at 1236; *see also Freedom Transp., Inc. v. Navistar Int'l Corp.*, No. 2:18-CV-02602-JAR-KGG, 2019 WL 4689604, at *16–*20 (D. Kan. Sept. 26, 2019); *AK Steel Corp. v. PAC Operating Ltd. P'ship*, No. 2:15-CV-09260-CM-GEB, 2017 WL 3314294, at *4 (D. Kan. Aug. 3, 2017); *Snyder Ins. Servs., Inc. v. Sohn*, No. 16-CV-2535-DDC-GLR, 2016 WL 6996265, at *3–*4 (D. Kan. Nov. 30, 2016); *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2016 WL 1047996, at *2–*4 (D. Kan. Mar. 11, 2016).  And as *Butler* noted, the Tenth Circuit hasn't addressed the constitutionality of the Kansas statute.  *Butler*, 433 F. Supp. 3d at 1236.[2]  But, the Supreme Court recently held that "a variety of 'actions of the defendant' that may seem like technicalities nonetheless can 'amount to a legal submission to the jurisdiction of a court.'"  *Mallory v. Norfolk S. Ry.*, 143 S. Ct. 2028, 2044 (2023) (quoting  *Ins. Corp. of Ir.*, 456 U.S. at 704–705).  One of those actions is filing paperwork to conduct business within a state, which doesn't violate the corporation's due process rights.  *Id.* at 2032.  *Butler*'s holding follows the guidance issued by

over a nonresident who expressly or impliedly consents to the personal jurisdiction of a court." (citing, among others, *Merriman*, 146 P.3d at 162)).

[2]      Our Circuit recently decided an appeal in this case, though it affirmed our court's decision on the merits of that action.  *See Butler v. Daimler Trucks N. Am., LLC*, ___ F.4th ___, No. 22-3134, 2023 WL 4676967 (10th Cir. July 21, 2023).  In regard to the waiver of personal jurisdiction issue cited in this case, our Circuit determined that issue wasn't before it on appeal.  *Id.* at *1 n.1.

both Supreme Court precedent and our Circuit's guidance.  The court sees no reason to deviate from its rule.

In sum, the court adheres to *Butler* and like cases from our court.  DTNA's registration to do business in Kansas confers general personal jurisdiction over DTNA and allows plaintiff to hale DTNA into court here.  The court thus declines to dismiss the claims against DTNA for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

## B. Failure to State a Claim (Fed. R. Civ. P. 12(b)(6))

### 1. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this Rule doesn't "require 'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, the Supreme Court has explained, simply "'will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

 When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must assume that the complaint's factual allegations are true.  *Id.* (citing *Twombly*, 550 U.S. at 555).  But the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief.  *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555 (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*,

556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When deciding whether a plaintiff's claim is plausible, the court considers "'the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Mbaku v. Carrington Mortg. Servs., LLC*, 735 F. App'x 533, 535–36 (10th Cir. 2018) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### 2. Analysis

The Petition here asserts five of its six claims against all the defendants. *See* Doc. 1-1 at 6–10 (Pet. ¶¶ 33–47, 58–67) (alleging negligence (Count I), breach of contract (Count II), breach of duty of good faith and fair dealing (Count III), negligent misrepresentation (Count V), and civil conspiracy (Count VI) against "all defendants"). But in its Response to the current motion,

---

[3]     Plaintiff argues that the notice pleading standards used by Kansas courts apply here because plaintiff initially asserted its claims in a Petition filed in Kansas state court. Plaintiff asserts that it "has found no binding case that holds that the heightened pleading standard applies to a petition that originated from the local court." Doc. 39 at 12. But plaintiff's research overlooked controlling authority from our Circuit. It has held that when "a case is removed to federal court, federal pleading standards govern." *Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 972 n.13 (10th Cir. 2021) (citing *Leiser v. Moore*, 903 F.3d 1137, 1139 n.1 (10th Cir. 2018) (further citations omitted)). Thus, the court applies the plausibility pleading standard from *Iqbal* and *Twombly*.

plaintiff argues that the only "claims applicable to DTNA are Counts V (negligent misrepresentation) and VI (civil conspiracy)." Doc. 39 at 13. By making this assertion and failing to address the other claims asserted against DTNA, plaintiff has abandoned Counts I–III as claims against DTNA. *See Maestas v. Segura*, 416 F.3d 1182, 1190 n.9 (10th Cir. 2005) (holding plaintiffs "appear to have abandoned . . . claims as evidenced by their failure to seriously address them in their briefs"); *Middleton-Thomas v. Piat, Inc.*, 323 F. Supp. 3d 1218, 1228 n.3 (D. Kan. 2018) (concluding that plaintiff's failure to address claims in summary judgment response meant "court need not address" them); *Fantozzi v. City of New York*, 343 F.R.D. 19, 32 (S.D.N.Y. 2022) ("Courts may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (quotation cleaned up)).

In contrast, plaintiff maintains that it has pleaded the claims in Counts V and VI properly. DTNA responds, asserting that plaintiff's pleading falls short because it fails to allege conduct specific to DTNA that could support either claim. DTNA has the better of the argument on the negligent misrepresentation claim, but it comes up short on the civil conspiracy claim. The court now explains why.

a.   Negligent Misrepresentation (Count V)

In a case exercising diversity jurisdiction, the court applies the substantive law of the forum state. *EFLO Energy v. Devon Energy Corp.*, 66 F.4th 775, 788 (10th Cir. 2023). Here, that's Kansas. Kansas law requires a negligent misrepresentation plaintiff to show:

> (1) The person supplying the false information failed to exercise reasonable care or competence in obtaining or communicating it; (2) the party receiving the false information reasonably relied on it; and (3) the person relying on the false information is a person or one of a group of persons for whose benefit and guidance the information is supplied or a person or one of a group of persons to whom the person supplying the information knew the information would be

13

communicated by another; and (4) the party receiving the information suffered damages.

*Rinehart v. Morton Bldgs., Inc.*, 305 P.3d 622, 630 (Kan. 2013) (citation omitted).  To survive the Motion to Dismiss relying on Rule 12(b)(6), plaintiff's Petition must provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  DTNA argues plaintiff can't meet this standard at the first element, since the Petition "has not identified any misrepresentation allegedly made by DTNA[.]"  Doc. 34 at 8.  Plaintiff responds that, as "asserted and otherwise [implied] in the Petition, DTNA . . . communicated to [plaintiff] that the engine seizure was not attributed to the faulty repair performed by Truck Center."  Doc. 39 at 13.  But, as DTNA contends, plaintiff neither asserts nor implies any such misrepresentation.

In its Petition, plaintiff alleges just one communication with DTNA.  Doc. 1-1 at 5 (Pet. at ¶ 28).  And during this conversation, according to plaintiff's allegation, plaintiff complained to DTNA that Transwest had removed the engine head of the truck.  *Id.* (Pet. at ¶¶ 27–28).  But these allegations never assert that DTNA made any claims or representations during this lone conversation.  Meanwhile, in Count IV's fraud claim against Truck Center, plaintiff alleges that defendant Truck Center "made misrepresentations that the truck could be driven and used for commercial purposes, by and through Truck Center's duly authorized representatives."  *Id.* at 8 (Pet. ¶ 49).  Later in the Petition, plaintiff attributes these misrepresentations to all defendants. *Id.* at 9 (Pet. ¶¶ 59–60) ("At the time Defendants made the foregoing false representations and material omissions to [plaintiff], Defendants had no reasonable grounds for believing them to be true.  These false representations and omissions were made by Defendants in a reckless and negligent manner.").  In so doing, plaintiff never identifies—specifically—the alleged misrepresentations made by DTNA.  Nor does plaintiff provide any factual context for

attributing the alleged misrepresentations by one defendant to all others.  Binding precedent strongly disfavors plaintiff's brand of conclusory, lumped together pleading.

The Supreme Court has held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A plaintiff must provide more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" to survive a motion to dismiss. *Id.*  But when laying out the claim for negligent misrepresentation, plaintiff, much like the plaintiffs in *Iqbal* and *Twombly*, can muster no more than a threadbare recital of the elements, resting wholly on conclusory statements.  And, as in *Iqbal* and *Twombly*, it's "the conclusory nature of [plaintiff's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Iqbal*, 556 U.S. at 681.

Because plaintiff makes no factual assertions that DTNA made any false statements, plaintiff has failed to assert a plausible claim for negligent misrepresentation.  It's missing a key ingredient for all four elements of the claim—providing "false information." *Rinehart*, 305 P.3d at 630.  And the era when abstract, conclusory assertions could survive a motion to dismiss has passed.  Plaintiff has failed to state a claim of negligent misrepresentation which could support relief, so the court dismisses Count V as it applies to DTNA.

### b.   Civil Conspiracy (Count VI)

To sustain a claim for civil conspiracy in Kansas, plaintiff must demonstrate:  "'(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.'" *Mid-Continent Anesthesiology, Chartered v. Bassell*, 504 P.3d 1069, 1084 (Kan. Ct. App. 2021) (quoting *State ex rel. Mays v. Ridenhour*, 811 P.2d 1220, 1226 (Kan. 1991) (quotation cleaned up)).  In federal court, this standard means plaintiff must plead enough factual

assertions that, if accepted as true, would state a plausible claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

DTNA argues that plaintiff "fails to plead essential elements" of a civil conspiracy claim. Doc. 34 at 10.  Specifically, DTNA argues plaintiff hasn't alleged an underlying tort claim or a meeting of the minds.  Doc. 34 at 10.  Plaintiff responds, asserting that it met its burden to survive a motion to dismiss.  While plaintiff comes closer to the mark than it did on Count V, it still falls short of the pleading burden.

Plaintiff alleges that all three defendants conspired to cover up Truck Center's faulty repair work.  Doc. 1-1 at 5 (Pet. ¶ 30).  DTNA concedes plaintiff's pleading satisfies the "two or more" requirement of the first element.  And plaintiff also alleged the intended object of the conspiracy—covering up the faulty repair's cause.  *Id.* at 5, 10 (Pet. ¶¶ 30, 63).  So, plaintiff has alleged sufficient facts for the first two elements of a civil conspiracy claim.  Plaintiff also has alleged sufficient facts for the fifth element of a conspiracy—damages proximately caused by the conspiracy.  Namely, plaintiff claims that it incurred costs to tow the truck and send another driver to retrieve goods from the inoperable truck.  *Id.* at 5 (Pet. ¶¶ 22–23).  DTNA concedes this allegation's sufficiency as well.  Doc. 34 at 10.

In contrast, DTNA contends that plaintiff hasn't sustained its pleading burden for the fourth element of a civil conspiracy claim—the element requiring allegations of one or more unlawful overt acts.  Doc. 34 at 10; Doc. 42 at 6.  DTNA claims plaintiff hasn't "alleged the underlying tort on which the supposed conspiracy is based."  Doc. 34 at 10.  DTNA's premise is right:  Kansas law requires a civil conspiracy plaintiff to "allege an underlying tort that is independent of the conspiracy" because such a tort is "a necessary element of the cause of action."  *Reams v. City of Frontenac*, 587 F. Supp. 3d 1082, 1104 (D. Kan. 2022) (citing *Stoldt v.*

*City of Toronto*, 678 P.2d 153, 161 (Kan. 1984)).  DTNA argues that the conspiracy claim

doesn't align with any of the torts alleged in the Petition and, "to the extent [plaintiff relies on

the] fraud [claim] (Count IV), that claim is not directed to DTNA in any event."  Doc. 34 at 10.

But the Kansas Supreme Court has held that civil conspiracy "is a theory used to impose

vicarious liability for concerted action."  *Ridenhour*, 811 P.2d at 1231.  As such, "Kansas law

recognizes [that] a civil conspiracy claim . . . imposes joint and several liability upon co-

conspirators."  *Emig v. Am. Tobacco Co.*, 184 F.R.D. 379, 383 (D. Kan. 1998).  In this way, civil

conspiracy bears a relationship to a claim of aiding and abetting.  *Ridenhour*, 811 P.2d at 1231.

Thus, plaintiff needn't to allege that DTNA, itself, has committed a tort.  Instead, this element

only required plaintiff to allege facts capable of holding one member of the conspiracy liable for

the underlying tort.  *See In re Motor Fuel Temperature Sales Pracs. Litig.*, 271 F.R.D. 221, 230

(D. Kan. 2010) ("Where defendants' conduct results from a conspiracy, they are legally liable to

plaintiffs even though they had no previous contact with them." (citing *Emig*, 184 F.R.D. at

386)).

Naturally, the court must accept all of plaintiff's well-pleaded factual allegations as true,

view them in the light most favorable to the nonmoving party, and draw all reasonable inferences

in favor of the plaintiff.  *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108

(10th Cir. 2023) (citation omitted).  This means the court's "task is to consider the complaint's

allegations 'taken as a whole.'"  *Clinton v. Sec. Benefit Life Ins.*, 63 F.4th 1264, 1275 (10th Cir.

2023) (quoting *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1173

(10th Cir. 2010)).  Here, plaintiff alleges that DTNA and other defendants "knowingly conspired

to cover up Truck Center's failure to properly repair the truck."  Doc. 1-1 at 5 (Pet ¶ 30).

Plaintiff's Petition included claims of negligence (Count I), fraud (Count IV), and negligent

misrepresentation (Count V), all of which remain pending against Truck Center.  The Petition also alleges that all defendants "acted in concert to perform the wrongful acts identified" throughout the Petition.  Doc. 1-1 at 10 (Pet. ¶ 63).

The Petition includes multiple tort claims that coincide with plaintiff's allegation of a conspiracy to perform "wrongful acts."  Viewing the Petition's allegations in the light most favorable to plaintiff, the claims involve an alleged failure to fix plaintiff's truck properly, an alleged misrepresentation of the truck's condition and usability, and an alleged effort to conceal the truck's true condition.  While plaintiff never identifies the specific tort underlying its civil conspiracy claim, its allegations encompass the negligence, fraud, and negligent misrepresentation claims in the Petition.  And because plaintiff "re-alleges each and every allegation" preceding its civil conspiracy claim as part of Count VI, Doc. 1-1 at 10 (Pet. ¶ 62), plaintiff's civil conspiracy claim could move forward with any of these claims providing the "underlying tort that is independent of the conspiracy[,]" thus satisfying the "necessary element of the cause of action," *Reams*, 587 F. Supp. 3d at 1104.

The sufficiency of the third element of a civil conspiracy claim—a "meeting of the minds in the object or course of action" of the conspiracy, *Mid-Continent Anesthesiology*, 504 P.3d at 1084—requires the court to make a much closer call.  Though it's close, the court concludes plaintiff has alleged enough to survive the motion to dismiss stage.  Plaintiff bases its "meeting of the minds" allegation on the assertion that all three defendants "are interrelated with common interests" and that DTNA is "Transwest's corporate office[.]"  Doc. 1-1 at 5 (Pet. ¶¶ 30, 28).  In the affidavit by George Eidsness, owner of defendant Transwest's parent company, he testifies that "Daimler Truck North America LLC ("Daimler") does not have any ownership interest in [defendant] Transwest or Transwest Inc." nor does it "direct Transwest in any way."  Doc. 36-1

at 2 (Eidsness Aff. ¶¶ 15–16).  But the court can't consider such a source outside the pleadings—let alone one submitted by another defendant in support of a separate motion—without converting DTNA's Motion to Dismiss into one for summary judgment.  Fed. R. Civ. P. 12(d).  Instead, the court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]"  *Twombly*, 550 U.S. at 555.

DTNA also argues that plaintiff "has not alleged the 'meeting of the minds' . . . , what the 'meeting of the minds' supposedly entailed, or how it occurred."  Doc. 34 at 10.  Plaintiff alleges, "upon information and belief, [DTNA] directed Transwest to do the complained-of removal of components of the truck critical to determining the cause of the engine seizure, thereby concealing Truck Center's deficient repair."  Doc. 1-1 at 5 (Pet. ¶ 29).  Without a reason to disregard this allegation, the court must accept it as true.  And this allegation, taken as true, is consistent with the claim that DTNA conspired in a fraudulent cover-up of faulty engine repairs.  While this allegation isn't impressive and thus doesn't predict a high chance of success, the court can't "impose a probability requirement at the pleading stage[.]"  *Twombly*, 550 U.S. at 556.  Instead, the governing standard requires only that the allegation, taken as true, will "possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Id.* at 557 (quoting Fed. R. Civ. P. 8(a)(2)).  Though plaintiff's civil conspiracy claim likely is a brittle one, the court properly can't dismiss the claim based on this pleading record.[4]

_____

[4]      The Petition (incorrectly spelling defendant DTNA's name most of the time as "Diamler") refers to DTNA just five times.  The first reference comes in the case's caption, and the second states plaintiff's assertion about DTNA's organizational structure (but correctly spelling its name).  *See* Doc. 1-1 at 2, 3 (Pet. ¶ 4).  The other three references provide little grist for the civil conspiracy claim:  (1) plaintiff allegedly complained to "Transwest's corporate office"—DTNA—whatever that means; (2) DTNA, plaintiff later learned, "acquiesced and upon information and belief, directed [defendant] Transwest to do the complained-of removal of components of the truck critical to determining the cause of the engine seizure, thereby concealing [defendant] Truck Center's deficient repair[;]" and (3) "[u]pon information and belief," DTNA, Transwest, and Truck Center "are interrelated with common interests and knowingly conspired to cover up Truck Center's failure to properly repair the truck."  Doc. 1-1 at 5 (Pet. ¶¶ 28–30).

In sum, plaintiff shoulders its burden to plead sufficient facts supporting the elements of a civil conspiracy claim.  Whether plaintiff can survive a motion for summary judgment is a question for another day.  But for now, its civil conspiracy claim alleges enough to survive DTNA's Motion to Dismiss.

## III.    Defendant Transwest's Motion to Dismiss (Doc. 13)

Turning next to defendant Transwest's motion, it also asserts two separate grounds for dismissal.  *First*, Transwest also argues that the court lacks personal jurisdiction over it.  *Second*, Transwest argues that a valid forum selection clause in its repair contract with plaintiff requires both parties to bring all actions "for the purpose of enforcing or otherwise relating to [the] repair order or any account or invoice" in the District Court of Adams County, Colorado.  Doc. 14 at 2.  Transwest also asks the court to award its attorneys' fees for filing the current motion.

The court grants Transwest's motion in part and denies it in part, addressing its three arguments in the next three subsections.  Subsection A explains why this court may not exercise personal jurisdiction over Transwest.  Subsection B briefly addresses Transwest's forum selection clause arguments.  And finally, in subsection C, the court decides defendant Transwest's request for attorneys' fees.

### A.  Lack of Personal Jurisdiction (Fed. R. Civ. P. 12(b)(2))

#### 1.  *Legal Standard*

The legal standard for a personal jurisdiction motion made under Fed. R. Civ. P. 12(b)(2) is the same one outlined in the analysis for DTNA's motion.  *See supra* Part II.A.1.  In response to defendant Transwest's motion, plaintiff's arguments again rely solely on general jurisdiction.  *See* Doc. 26 at 3–7.  So, the court again restricts its analysis to that prong of personal jurisdiction.

---

*See also id.* at 10 (Pet. ¶ 63) (Count VI's claim for Civil Conspiracy, alleging merely that defendants "acted in concert to perform the wrongful acts identified" in the Petition, "including concealing the cause of the truck seizure and faulty repair by Truck Center").

### 2. Analysis

Here, plaintiff relies solely on general jurisdiction to satisfy the minimum contacts requirement. This means that plaintiff must demonstrate that defendant Transwest "should reasonably anticipate being haled into court" in Kansas. *XMission*, 955 F.3d at 839 (quotation cleaned up). This standard requires that defendant's "contacts with [Kansas] are so continuous and systematic that [defendant] is essentially at home" here in Kansas. *Id.* at 840 (quotation cleaned up). A corporation is "at home" in two places: the state of its principal place of business and its state of incorporation. *Daimler AG*, 571 U.S. at 137 (citations omitted). Transwest is a Colorado limited liability company whose sole member, Trans-West, Inc., is a corporation incorporated and with its principal place of business in Colorado. Doc 17 at 2. Transwest's principal place of business is also in Colorado. *Id.* Thus, Transwest argues, general jurisdiction can't supply a basis for personal jurisdiction.

Plaintiff disagrees. Doc. 26 at 4. To begin, plaintiff argues that defendant Transwest "has submitted no proof via affidavit or otherwise for its contention that it has insufficient contacts with Kansas." *Id.* But plaintiff's argument places the burden on the wrong party. Plaintiff bears the burden—albeit a slight one at this stage—to demonstrate the court has personal jurisdiction over each defendant. *Eighteen Seventy*, 32 F.4th at 964 (citations omitted); *AST Sports Sci., Inc.*, 514 F.3d at 1056 (citation omitted). Trying to shoulder that burden, plaintiff makes two arguments. *First*, it contends that Transwest's website "creates necessary continuous and systematic contacts with Kansas to subject it . . . to general jurisdiction" since it uses the website "to market, advertise, and sell its products throughout the United States, including in Kansas[.]" Doc. 26 at 5. *Second*, plaintiff also argues that Transwest has a manufacturing location in Wathena, Kansas, which means, in plaintiff's view, that Transwest

"has a continuous presence and does business in Kansas." *Id.* Neither argument can discharge even the slight burden plaintiff must shoulder at this stage.

Our Circuit shares the widely held view that "maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) (first citing *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010); then citing *Carefirst of Md. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 401 (4th Cir. 2003); and then citing *Revell v. Lidov*, 317 F.3d 467, 471–76 (5th Cir. 2002)). Instead, our Circuit has held that a defendant must "intentionally direct[ ] internet content or operations at the forum state[,]" a principal that "has its grounding in the 'express aiming' requirement the Supreme Court developed" in *Calder v. Jones*, 465 U.S. 783 (1984). *Shrader*, 633 F.3d at 1241 (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002)). A website simply doesn't "subject its creator . . . to personal jurisdiction . . . under any standard promulgated by any court" when it "appears to be a passive Web site that does little more than make information available to those who are interested" and "simply post[s] information on an Internet Web site which is accessible to users in foreign jurisdictions." *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999) (quotation cleaned up).

Plaintiff asserts that Transwest's site "boasts that one can '[f]ind locations for Transwest products and services throughout the United States and Canada.'" Doc. 26 at 5 (citing Doc. 27-1 (Pl.'s Ex. 1)). But plaintiff never alleges that Transwest "has actually and deliberately used its website to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum." *Shrader*, 633, F.3d at 1243 (quotation cleaned up). Instead, Transwest's site appears to do "little else than make information available to those who are interested[.]"

*Soma*, 196 F.3d at 1297.  And, according to an affidavit by George Eidsness, owner of Transwest's parent company, the site in question instead belongs to Transwest's parent company and is "dedicated to all entities associated with Trans-West Inc."  Doc. 36-1 at 2 (Eidsness Aff. ¶ 11).  In sum, this website doesn't make Transwest at home in Kansas.

Plaintiff's second argument fails for much the same reason.  The website operated by Transwest's parent company references "a sister company d/b/a Summit Truck Bodies," which maintains a manufacturing location in Wathena, Kansas.  *Id.* (Eidsness Aff. ¶¶ 11–12).  But "neither [defendant] Transwest nor [its parent company] Trans-West Inc. ha[s] any ownership interest in Summit Truck Bodies."  *Id.* (Eidsness Aff. ¶ 14).  Again, plaintiff hasn't demonstrated that the defendant it sued in Kansas maintains a presence in Kansas suggesting it is essentially at home in Kansas.  This is particularly true now because Transwest has contested plaintiff's vague allegation with a specific and focused affidavit.

Nothing in plaintiff's contentions suggests that the parent company's website establishes a "continuous and systematic general business contacts" with Kansas that can support the factors in *Trierweiler*.  *OMI Holdings, Inc.*, 149 F.3d at 1091 (quotation cleaned up).  Summarizing those requirements, plaintiff hasn't shown that defendant Transwest (1) "solicits business in [Kansas] through a local office or agents;" (2) "sends agents into [Kansas] on a regular basis to solicit business;" (3) "holds itself out as doing business in [Kansas] through advertisements, listings or bank accounts;" or (4) maintains any substantial volume of business in Kansas.  *Trierweiler*, 90 F.3d at 1533.  Plaintiff's effort to establish jurisdiction simply relies on a website belonging to Transwest's parent company—not defendant Transwest.  But plaintiff didn't sue the parent company.  Nor has it argued that "disregarding the corporate entity is necessary to achieve equity on grounds that the corporation was used as a cover for fraud or illegality, or to work an

injustice" to encourage the court to disregard "the corporate veil." *Schutte v. Petter Constr. Co., Inc.*, No. 99,870, 2009 WL 1911693, at *6 (Kan. Ct. App. July 2, 2009) (reciting Kansas test for piercing corporate veil) (citing *Amoco Chems. Corp. v. Bach*, 567 P.2d 1337, 1341 (Kan. 1977)); *see also Cyprus Amax Mins. Co. v. TCI Pac. Commc'ns, LLC*, 28 F.4th 996, 1008 (10th Cir. 2022) ("[T]he test as applied here asks whether the outcome of the present litigation would be unjust if a court refused to pierce [the] corporate veil."). The court thus declines to accredit this argument, as Kansas law directs that courts should disregard the veil "reluctantly and cautiously." *Sampson v. Hunt*, 665 P.2d 743, 751 (Kan. 1983) (citation omitted).

In sum, plaintiff has failed to carry its burden to establish general personal jurisdiction under this standard. And because plaintiff doesn't demonstrate the required minimum contacts, the court needn't proceed to the second prong of the analysis, *i.e.*, to decide whether personal jurisdiction would satisfy notions of fair play and substantial justice. The court grants defendant Transwest's Motion to Dismiss (Doc. 13) for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

### B.  Forum Selection Clause

Given the court's conclusion that it lacks personal jurisdiction over Transwest, there's no need to consider the forum selection clause.

### C.  Attorney's Fees

Finally, Transwest's Memorandum in Support of its Motion to Dismiss Plaintiff's Petition (but not its motion) requests an award of attorneys' fees. *See* Doc. 14 at 2–3, 9. Fed. R. Civ. P. 54 requires a party to assert a claim for attorneys' fees by motion "unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). At this stage, the court knows little about the legal theory of Transwest's fee claim and, in particular, how Rule 54 applies to it. One of two things is true. If the purported right to

24

fees is provided by a statute, Transwest hasn't complied with Rule 54's requirement to file a motion. *See* Fed. R. Civ. P. 54(d)(2)(A). Alternatively, if Transwest claims its right to fees is "an element of damages," *id.*, it hasn't asserted that claim in a Counterclaim or other pleading. Either way, Transwest has failed to support its fee request adequately, so the court denies Transwest's fee request in its memorandum, but without prejudice.

## IV.   Conclusion

The court grants in part and denies in part defendant DTNA's Motion to Dismiss (Doc. 33). The court dismisses Counts I, II, and III of the Petition against defendant DTNA because plaintiff has abandoned them. And it dismisses plaintiff's negligent misrepresentation claim (Count V) for failure to state a claim under Fed. R. Civ. P. 12(b)(6). But it denies DTNA's motion to dismiss the civil conspiracy claim (Count VI).

The court grants defendant Transwest's Motion to Dismiss (Doc. 13), concluding under Rule 12(b)(3) that the court lacks personal jurisdiction over Transwest. But the court denies defendant Transwest's request for attorney's fees because it has failed to comply with Fed. R. Civ. P. 54. The fees decision is without prejudice should defendant Transwest bring such a motion in compliance with the federal and local rules.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant DTNA's Motion to Dismiss (Doc 33) is granted in part and denied in part, as explained by this Order.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant Transwest's Motion to Dismiss (Doc. 13) is granted in part and denied without prejudice in part, as explained by this Order.

**IT IS SO ORDERED.**

Dated this 28th day of July, 2023, at Kansas City, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge