## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SKYLINE TRUCKING, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 22-4052-DDC-TJJ** |
| **TRUCK CENTER COMPANIES,** **TRANSWEST TRUCK TRAILER RV,** **AND DAIMLER TRUCK NORTH** **AMERICA LLC,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the court on defendant Transwest Truck and Trailer RV's Motion for Attorneys' Fees and Costs (Doc. 49). On July 28, 2023, the court dismissed Transwest from the case for lack of personal jurisdiction. *See* Doc. 43 at 25. Transwest now requests $53,301.00 for attorneys' fees as costs incurred defending against plaintiff Skyline Trucking, Inc.'s claims. *See* Doc. 49 at 9. The court grants in part and denies in part Transwest's request for attorneys' fees. The court awards Transwest attorneys' fees, but adjusts the award's amount under the reasonableness analysis required by Kansas law. Before outlining the reasons for its decision, the court recites the relevant background facts and procedural history.

### I. Background Facts and Procedural History

In June 2020, plaintiff began experiencing problems with its truck when driving through Kansas to fulfill a shipping contract. Doc. 1-1 at 3–4 (Pet. ¶¶ 9–10). Plaintiff took its truck to defendant Truck Center's shop for repair.[1] *Id.* at 4 (Pet. ¶ 11). A few days later, Truck Center

---

[1] While plaintiff sued multiple defendants, only defendant Transwest moves for attorneys' fees.

informed plaintiff that it had completed the repairs, and plaintiff paid $11,750.55 for Truck Center's services.  *Id.* (Pet. ¶¶ 12–13).  Plaintiff then resumed driving its route, but the truck continued to manifest mechanical problems.  *Id.* (Pet. ¶¶ 13–14).  Plaintiff reported these problems to Truck Center repeatedly.  *Id.* (Pet. ¶ 15).  Truck Center replied that it had repaired the truck and assured plaintiff that the problem would resolve itself.  *Id.* (Pet. ¶¶ 15–16).  The next day, the truck's engine seized while plaintiff was driving on a highway in Colorado.  *Id.* (Pet. ¶ 19).  The incident rendered the truck inoperable.  *Id.*

Plaintiff had the truck towed to defendant Transwest's shop.  *Id.* at 5 (Pet. ¶ 23).  Plaintiff informed Transwest about the truck's recent repair by Truck Center.  *Id.* (Pet. ¶ 25).  And plaintiff's agent signed a Repair Order, which included a collection/dispute policy provision on the back.  Doc. 49-1 at 2–3 (Def.'s Ex. A); Doc. 50 at 4–5.  Several days passed and plaintiff didn't hear from Transwest.  Doc. 1-1 at 5 (Pet. ¶ 26).  Then, plaintiff learned that Transwest had removed the truck's engine head without notifying or securing permission from plaintiff.  *Id.* (Pet. ¶ 27).  Plaintiff then complained to Transwest's corporate office, defendant Daimler Truck North America LLC.  *Id.* (Pet. ¶ 28).

Unable to resolve the truck's problems satisfactorily, plaintiff filed this action in Saline County District Court in Kansas on June 13, 2022.  *Id.* at 2 (Pet.).  On September 19, 2022, Transwest's counsel emailed plaintiff's counsel and highlighted the exclusive jurisdiction and venue provision in the parties' Repair Order contract.  Doc. 49-2 at 2 (Def.'s Ex. B).  In the email, Transwest's counsel warned plaintiff's counsel that it would file a motion to dismiss and seek attorneys' fees under the parties' contract unless plaintiff dismissed Transwest from the Kansas action.  *Id.*  Less than two weeks later, Truck Center removed this action to federal court.  *See* Doc. 1.

After removal, Transwest filed a Motion to Dismiss for Lack of Jurisdiction (Doc. 13). Transwest argued that plaintiff hadn't met its burden to make a prima facie showing that Kansas had personal jurisdiction over Transwest. Doc. 14 at 3. Transwest also argued that the court should dismiss plaintiff's claims against it under the Repair Order's forum selection clause. *Id.* at 8. And Transwest also moved for attorneys' fees under the Repair Order's plain language. *Id.* at 2. The relevant portions of the Repair Order provide:

> In the event any account or invoice is referred for collection or there is any other dispute concerning the repair order the customer shall pay all reasonable attorneys' fees and all other costs and expenses of collection. . . . In the event that any party brings a lawsuit (or other proceeding) for the purpose of enforcing or otherwise relating to this repair order or any account or invoice, exclusive jurisdiction and venue shall be in the County or District Court for the County of Adams, State of Colorado[.]

Doc. 14-1 at 12; Doc. 49-1 at 3 (Def.'s Ex. A).

The court granted defendant Transwest's Motion to Dismiss (Doc. 13) based on lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). *See* Doc. 43 at 24. The court did not address the contract's forum selection clause. *Id.* The court also denied Transwest's request for attorneys' fees, but without prejudice. *Id.* at 25. The court explained that Fed. R. Civ. P. 54 requires a party to assert a claim for attorneys' fees by motion "unless the substantive law requires those fees to be proved at trial as an element of damages." *Id.* at 24 (quoting Fed. R. Civ. P. 54(d)(2)(A)). Transwest now moves for attorneys' fees under Rule 54. Doc. 49.

The court evaluates Transwest's motion in the following sequence: First, the court addresses the merits of a fee award under the terms of the parties' Repair Order contract. Then, after awarding fees under the contractual provision, the court declines to reach Transwest's bad faith exception argument. Instead, the court moves on to a reasonableness analysis, evaluating the reasonableness of the requested fees under the relevant Kansas law, Kansas Rule of

Professional Conduct (KRPC) 1.5(a).  Last, the court concludes by summarizing its adjustments to the fee award under the reasonableness analysis and awards Transwest a modified sum.

## II.      Attorneys' Fees Award under the Parties' Contract

Transwest contends that the court should award it attorneys' fees for two reasons:  (i) Transwest is entitled to attorneys' fees based on the plain language of the Repair Order and (ii) plaintiff's bad faith creates an exception to the American Rule for attorneys' fees.  Doc. 49 at 3–6.  The court's analysis starts with the plain language argument.  The court recites the legal standard for attorneys' fee awards under a contractual provision, below.

### A.      Legal Standard for Contractual Fee Award

Fed. R. Civ. P. 54(d) allows a party to move for attorneys' fees.  It requires that such motion "specify the judgment and the statute, rule, or other grounds entitling the movant to the award[.]"  Fed. R. Civ. P. 54(d)(2)(B)(ii).  Where those other grounds include a contractual provision—that is, where contracting parties have agreed to shift attorneys' fees—the fee award simply provides the parties with the benefit of their bargain.  *U.S. ex rel. C.J.C., Inc. v. Western States Mech. Contractors, Inc.*, 834 F.2d 1533, 1548 (10th Cir. 1987).  And so, courts should enforce—and routinely do enforce—the parties' bargain by awarding fees according to the contract's terms.  *Id.* at 1547–48.  In doing so, the court must follow the plain language of the agreement.

Indeed, under Kansas contract law,[2] "courts do not construe contracts but merely enforce the contract terms in accordance with their plain and ordinary meanings"—absent ambiguity.  *Sheldon v. KPERS*, 189 P.3d 554, 561 (Kan. Ct. App. 2008).  And courts

---

[2]      Both parties apply Kansas law in their briefing on this motion.  Neither party ever explains why Kansas law should apply.  Transwest correctly asserts that—in a diversity action—state substantive law governs a party's right to recover attorney fees as the prevailing party.  Doc. 49 at 3 (citing *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351, 1352 (10th Cir. 1997)).  But Transwest doesn't

have the duty to sustain the legality of a contract in whole or in part when the contract was fairly entered into and it is reasonably possible to do so, rather than seeking loopholes and technical legal grounds for defeating the contract's intended purpose. The paramount public policy is that freedom of contract should not be interfered with lightly.

*Wichita Clinic, P.A. v. Louis*, 185 P.3d 946, 951 (Kan. Ct. App. 2008). In light of this legal standard, analyzing the contract's fee-shifting provision is a straightforward endeavor.

## B.     Analysis of the Contract's Fee-Shifting Provision

Here, the contract provides as follows: "In the event any account or invoice is referred for collection or there is any other dispute concerning the repair order the customer shall pay all reasonable attorneys' fees and all other costs and expenses of collection." Doc. 49-1 at 3 (Def.'s Ex. A). The plain language of the contract is clear. The customer pays *all* reasonable attorneys' fees when the parties dispute the repair order. The court finds no ambiguity about who must pay or in what situations the provision applies. The court thus sees no basis to construe the parties' contract differently. And so, the court must enforce the contract's plain and ordinary meaning: plaintiff, as the customer, must pay Transwest's reasonable attorneys' fees.

---

premise its motion on its status as a prevailing party. Instead, Transwest asks the court to "enforce the provisions" of the parties' contract. Doc. 52 at 2. And the contract includes the following choice of law provision: "All disputes related to this repair order or any account or invoice shall be governed and construed in accordance with the laws of the State of Colorado, Missouri, and Texas." Doc. 49-1 at 3 (Def.'s Ex. A). Kansas isn't one of the states chosen by the contract.

When a court sits in diversity, it must apply the conflict of laws rules of the state in which it sits to determine the applicable law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In Kansas, if the relevant contract contains a choice of law provision, "Kansas courts generally effectuate the law chosen by the parties to control the agreement." *Brenner v. Oppenheimer & Co.*, 44 P.3d 364, 375 (Kan. 2002). Given this conflict of laws rule, the court questions whether Kansas law is the correct law to apply here. But plaintiff doesn't raise any objection to Transwest's use of Kansas law. Indeed, plaintiff's Response assumes that Kansas law controls. *See, e.g.*, Doc. 50 at 2–3 (citing Kansas law for the definition of a "prevailing party" and discussion of the "net judgment rule"). Plaintiff thus waived its right to challenge Transwest's application of Kansas law. And the parties don't brief the issue. So, the court follows the parties' lead and applies Kansas law to the matter at hand. *See Monarch Casino & Resort, Inc. v. Affiliated FM Ins. Co.*, 85 F.4th 1034, 1039 (10th Cir. 2023) (explaining the court's choice to apply Colorado law, in part, because "the parties have chosen to use Colorado law").

Despite the contract's apparent clarity, plaintiff asks this court to withhold the attorneys'

fees award because Transwest isn't the prevailing party or, in the alternative, because the

unilateral nature of the contractual provision awarding fees is unconscionable.[3]  The court will

address each request in turn.

### C.      Prevailing Party

The court agrees with plaintiff.  Transwest is not the prevailing party in this litigation.

First, a dismissal for lack of personal jurisdiction is not a judgment on the merits and prevailing

on a jurisdictional challenge doesn't make the winner a prevailing party.  *Murray v. Jewell Cnty.,*

*Kan.*, No. 11-CV-00596, 2011 WL 2601528, at *4 (D. Colo. June 30, 2011).  And, second,

Kansas courts have "adopted the definition of 'prevailing party' from Black's Law Dictionary[.]"

*Curo Enters., LLC v. Dunes Residential Servs., Inc.*, 342 P.3d 948, 956 (Kan. Ct. App. 2015).

This definition reads as follows:

> "The party to a suit who successfully prosecutes the action or successfully defends
> against it, prevailing on the main issue, even though not necessarily to the extent of
> his original contention.  The one in whose favor the decision or verdict is rendered
> and judgment entered. . . . The party ultimately prevailing when the matter is finally
> set at rest."

*Id.* (quoting *Prevailing Party*, *Black's Law Dictionary* (5th ed. 1979)).

---

[3]      Plaintiff also argues that the Repair Order's language doesn't grant attorneys' fees unless they are
related to a collection dispute.  Doc. 50 at 4–5.  Plaintiff highlights the following language in the Repair
Order:  "In the event any account or invoice is referred for collection or there is any dispute concerning
the repair order the customer shall pay all reasonable attorneys' fees and all other costs and expenses of
collection."  *Id.* (quoting Doc. 49-1 at 3 (Def.'s Ex. A)).  Then plaintiff contends that "this is not a
collection matter."  *Id.* at 5.  But the relevant language explicitly allows for a "dispute" other than one
related to a collection.  And the context surrounding plaintiff's identified language clarifies the
provision's scope:  "In the event that any party brings a lawsuit (or other proceeding) for the purpose of
enforcing or otherwise relating to this repair order or any account or invoice . . . ."  *Id.* at 5 (quoting Doc.
49-1 at 3 (Def.'s Ex. A)).  Even if the contractual language were less clear, the Tenth Circuit has
interpreted collection costs broadly.  *Okla. Fixture Co. v. Ask Comput. Sys., Inc.*, 45 F.3d 380, 382 (10th
Cir. 1995) ("The contract language 'all reasonable collection costs' is a broad term, and a common sense
reading includes attorney's fees.")  So, the court concludes, plaintiff's textual argument here is meritless.

Here, Transwest didn't secure a judgment on the merits.  Instead, the court dismissed Transwest for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  *See* Doc. 43 at 24.  So, Transwest, as the dismissed party, isn't a prevailing one.  *Murray*, 2011 WL 2601528, at *4.  And, given the way Kansas law defines the term, Transwest didn't successfully defend against the action or prevail on the main issue.  *Curo Enters.*, 342 P.3d at 956.  The court likewise rendered no decision on the merits and it entered no judgment.  *Id.*  Indeed, the court's lack of personal jurisdiction over Transwest precluded any such decision or judgment.  Transwest isn't a prevailing party.

But the contractual provision awarding Transwest attorneys' fees doesn't require it to prevail.  While that's curious, the plain language of the Repair Order requires the customer to pay *all* reasonable attorneys' fees.  Doc. 49-1 at 3 (Def.'s Ex. A).  The contract attaches no conditions.  And so, the contract provides that the court should award Transwest attorneys' fees—regardless of its prevailing party status.  This conclusion logically leads to plaintiff's second argument:  such an expansive contract provision is unconscionable.  The court addresses this argument next.

### D.   Unconscionability

Plaintiff contends that—even if the contract does provide for attorneys' fees without requiring prevailing party status—such a provision is unconscionable and thus unenforceable.  Doc. 50 at 5.  Under Kansas law, a contract, or contract provision, is unconscionable when it is "outrageous," "unfair," "shocks the conscience," or "is so one-sided that no reasonable person would view it as just."  *Stormont-Vail Hosp. v. Spurling*, 331 P.3d 834, 2014 WL 4082469, at *4 (Kan. Ct. App. 2014) (citation omitted).  "But a contract is not unconscionable solely because of a bad bargain or uneven bargaining power."  *State v. Bell*, 344 P.3d 397, 2015 WL 1123022, at

7

*2 (Kan. Ct. App. 2015).  Absent "proof of fraud, mistake, or duress, a party is bound by the contract he signs—even if the contract's provisions are disadvantageous to him or he failed to read it."  *Spurling*, 2014 WL 4082469, at *4 (citations omitted).  And the "party seeking to prove that a contract is invalid has the burden of establishing its unconscionability."  *Id.* at *5 (citation omitted).

To support its unconscionability argument, plaintiff lists ten factors Kansas courts have used to identify an unconscionable contract provision.  Doc. 50 at 5–6.  Those factors are:

> (1) The use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position; (2) a significant cost-price disparity or excessive price; (3) a denial of basic rights and remedies to a buyer of consumer goods; (4) the inclusion of penalty clauses; (5) the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect; (6) the hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract; (7) phrasing clauses in language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through them; (8) an overall imbalance in the obligations and rights imposed by the bargain; (9) exploitation of the underprivileged, unsophisticated, uneducated and the illiterate; and (10) inequality of bargaining or economic power.

*Santa Rosa KM Assocs., Ltd., P.C. v. Principal Life Ins. Co.*, 206 P.3d 40, 50 (Kan. Ct. App. 2009) (quotation cleaned up).

Plaintiff asserts that four of those factors apply here:  "(1), (5), (6) and (10) are at a minimum present here."  Doc. 50 at 6.  Full stop.  Plaintiff identifies the allegedly pertinent factors by numerical designation alone.  Plaintiff makes no attempt to expound on these factors or explain how they apply to the present facts.  To be sure, earlier in its brief, plaintiff describes the attorneys' fees provision as "boilerplate" and notes that it appears "on the back of the repair order," "after the signature section," and was "drafted by Transwest—the party in the strongest economic position at the time of contracting[.]"  *Id.* at 5.  The court can surmise—and absent any

clear argument by the plaintiff, surmising is all the court can do—that this description may reference the first and sixth factors:

> (1) The use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position . . . (6) the hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract[.]

*Id.* at 5–6 (quoting *Santa Rosa*, 206 P.3d at 50).  But, even if the court credits plaintiff with raising those two factors based on the brief's earlier description, plaintiff fails to offer any support for the fifth and tenth factors.  Instead, plaintiff leaves the court to peel that onion.  But plaintiff—as the party attacking the contract—bears the burden to establish unconscionability as the party attacking the contract.  It's not the court's job.  And factors (5) (the circumstances surrounding the contract's execution) and (10) (the inequality of power) both require explanation and factual support.  Plaintiff has failed to carry its burden.

What's more, even if the court elected to peel the onion for plaintiff—and finds all four factors favor plaintiff—that's still not enough.  Plaintiff never explains how four factors (out of ten) tip the scale in its favor.  Indeed, in *Spurling*, the Kansas Court of Appeals held a contract enforceable when three of the ten unconscionability factors weighed against enforcement.  2014 WL 4082469, at *5–6.

Here, plaintiff asserts four out of ten factors weigh against enforcement.  The court thus may assume the other six factors favor enforcement of the contract as written.[4]  So, were even one of plaintiff's alleged factors to swing the other way, the balance would mirror *Spurling*.  And, given that balance, the court presumably could find the contract enforceable.  Naturally, the

---

[4]     True, plaintiff includes the phrase "at a minimum" before its assertion that four factors weigh against enforceability.  Doc. 50 at 6.  But—to allege additional factors—plaintiff could simply have typed additional numbers.  Plaintiff didn't.  The court refuses to consider factors not invoked by plaintiff, particularly when invoking them would have required so little effort.

court recognizes that a factors analysis is not a sheer numbers game. And the court acknowledges that the three factors here may differ from the three factors in *Spurling*. The court simply strives to highlight the paucity of support plaintiff has provided. Surely the proposition that only four out of ten factors suffice to tip the scale in favor of unenforceability merits at least some argument—particularly when Kansas case law demonstrates that three out of ten won't suffice. But plaintiff offers no such argument.

Nor has the court independently discovered a reason not to enforce the attorneys' fees provision here. To be sure, the court's research revealed that some states perceive unilateral attorneys' fees to violate public policy. And those states have instituted legislation requiring courts to translate such provisions into reciprocal clauses. *See Curo Enters.*, 342 P.3d at 955 ("California has a reciprocity rule which forbids unilateral attorney fee provisions in contracts." (citing Cal. Civ. Code § 1717)); *see also Vasquez v. Paso Fino Horse Ass'n Inc.*, No. 5:18-366, 2019 WL 3842863, at *3 (E.D. Ky. Aug. 14, 2019) ("Several states have enacted legislation overriding contractual provisions which provide that only one party may recover attorney's fees." (citing Cal. Civ. Code § 1717; Wash. Rev. Code § 4.84.330; Fla. Stat. Ann. § 57.105(7))). But Kansas isn't one of those states. Instead, the Kansas legislature has limited its concerns about unilateral attorneys' fees to contracts arising in the residential landlord/tenant context. *See Kan. Stat. Ann.* § 58-2547(a)(3); *see also* Jeffrey C. Bright, *Unilateral Attorney's Fees Clauses: A Proposal to Shift to the Golden Rule*, 61 Drake L. Rev. 85, 89 n.13, 114 n.143 (2012) (categorizing states' responses to unilateral attorneys' fees clauses—into those with reciprocal fees statutes, limited reciprocal fees statutes, some protections, and no protections—and placing Kansas in the some protections category based on Kan. Stat. Ann. § 58-2547(a)(3)).

So, plaintiff hasn't carried its burden to establish the contract provision's unconscionability.  And the court hasn't discovered an alternative basis to hold the provision unenforceable.  Even if plaintiff now believes the contract is a bad bargain—absent mistake, duress, or fraud—the court must enforce it.  *Spurling*, 2014 WL 4082469, at *4.  And plaintiff hasn't pleaded mistake, duress, or fraud.  The court thus holds the attorneys' fees provision enforceable and awards reasonable attorneys' fees to Transwest under the contract's terms.

Because the court grants fees under the relevant contractual provision, it needn't decide whether plaintiff's alleged bad faith entitles Transwest to attorneys' fees.  Instead, the court determines, next, the amount it should award Transwest under the contract's provision—a determination that turns on reasonableness.

### III.    The Reasonableness of Transwest's Attorneys' Fees

Transwest seeks an award of $53,301 for 159 labor hours performed by five attorneys and three paralegals.  Doc. 49 at 7–9.  The court evaluates the reasonableness of these fees, first, by reciting the controlling legal standard under Kansas law.

### A.    Legal Standard for Fee Award Reasonableness

Kansas courts apply a different standard when analyzing the reasonableness of a request for attorneys' fees under a contract compared to a fee request authorized by statute.  *Enter. Bank & Tr. v. Barney Ashner Homes, Inc.*, 300 P.3d 115, 2013 WL 1876293, at *21 (Kan. Ct. App. May 3, 2013).  A statute-based award grants "fees to a prevailing party to support litigation serving the public good[.]"  *Id.*  In contrast, a contract-based award serves "purely private interests."  *Id.*  And so, "where attorney fees are awarded based on the contractual agreement of the parties, [courts] have no independent duty to peruse the itemized statements for reasonableness in the absence of particularized objections."  *Id.*

Despite the differing standard for statutory and contract-based fee awards, "the district court should not 'simply award the full amount billed' but clearly ha[s] discretion to adjust a contractual award of fees if an award is inequitable or unreasonable."[5] *Westar Energy, Inc. v. Wittig*, 235 P.3d 515, 532 (Kan. Ct. App. 2010) (quoting *Western States*, 834 F.2d at 1548). The Kansas Supreme Court has determined a court should exercise such discretion by applying "the reasonableness factors of Rule 1.5 of the Kansas Rules of Professional Conduct[.]" *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1228 (10th Cir. 2009) (citing, for awarding fees under a contractual provision, *Davis v. Miller*, 7 P.3d 1223, 1236 (Kan. 2000)); *see also Kan. Penn Gaming, LLC v. HV Props. of Kan., LLC*, 790 F. Supp. 2d 1307, 1314 (D. Kan. 2011) (holding that when a contract provides for reasonable attorneys' fees, the court must apply the KRPC 1.5(a) factors). Those eight factors are:

> "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;"

> "(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;"

> "(3) the fee customarily charged in the locality for similar legal services;"

---

[5]  The court acknowledges the Tenth Circuit has rejected applying *Western States*'s "inequitable or unreasonable" test—in favor of applying KRPC 1.5(a)—to a contractual award of fees when a contract explicitly provides the fees should be reasonable. *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1229 (10th Cir. 2009). And the Kansas Court of Appeals agreed with the Tenth Circuit's rejection. *Westar Energy, Inc. v. Wittig*, 235 P.3d 515, 532 (Kan. Ct. App. 2010) ("We agree with the analysis performed by the 10th Circuit Court of Appeals in *Lake* when it accurately predicted the Kansas Supreme Court would look to the various factors listed in KRPC 1.5(a) to assess the reasonableness of attorney fees arising from an agreement to pay them."). Nonetheless, the Kansas Court of Appeals explicitly endorsed aspects of *Western States*. *Id.* ("Even so, we note the court in *Western States* makes clear that the district court should not 'simply award the full amount billed' but clearly had discretion to adjust a contractual award of fees if an award is inequitable or unreasonable."). And the Kansas court cited with approval *Western States*'s distinction between the court's duty when evaluating attorneys' fees awarded under statute as opposed its duty for fees awarded under contract. *Id.* And so, the court exercises the discretion to adjust the fee award amount here—not simply awarding the full amount billed—even though the court doesn't apply the "inequitable or unreasonable" test endorsed in *Western States*.

"(4) the amount involved and the results obtained;"

"(5) the time limitations imposed by the client or by the circumstances;"

"(6) the nature and length of the professional relationship with the client;"

"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and"

"(8) whether the fee is fixed or contingent."

*Wittig*, 235 P.3d at 529 (quoting KRPC 1.5(a)).

Kansas courts have clarified that a court must address these eight factors—rather than simply relying on a lodestar[6] calculation. *Richardson v. Murray*, 469 P.3d 104, 2020 WL 4723097, at *5–6 (Kan. Ct. App. 2020). Indeed, the Kansas Court of Appeals instructs "that in awarding attorney fees, the law requires consideration of all relevant factors, not merely time spent multiplied by an hourly rate." *Id.* at 5 (internal quotation marks and citation omitted). Finally, the party seeking attorneys' fees and expenses bears the burden of proving the reasonableness of the amount sought. *Wittig*, 235 P.3d at 532 (discussing *Lake*, 552 F.3d at 1229).

Thus, the court examines the eight KRPC 1.5(a) factors next to determine if Transwest has met its burden to prove the reasonableness of the amount sought. In doing so, the court will not "peruse the itemized statements" but will focus instead on plaintiff's "particularized objections." *Enter. Bank & Tr.*, 2013 WL 1876293, at *21.

---

[6]     The "lodestar" figure is "the reasonable number of hours spent on litigation multiplied by a reasonable hourly rate." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000) (citation omitted).

**B.** **The Reasonableness of the Award**

**1.** **Time and Labor Required; Novelty and Difficulty; Requisite Skill**

Most of plaintiff's objections about the award's reasonableness fall under the first KRPC 1.5(a) factor. Recall, this first factor reads: "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly[.]" KRPC 1.5(a)(1). Plaintiff alleges that Transwest's 159 billed hours exceeds what's required for such a straightforward action, which is neither novel nor difficult. Doc. 50 at 7. And plaintiff argues that the time billed is excessive because the case was overstaffed. Utilizing five attorneys and three paralegals across two firms creates inherent inefficiencies, plaintiff avers. *Id.* at 7–8. Finally, plaintiff contends that the court shouldn't award the fees requested for clerical work, block-billed work, or pro hac vice work—at least not at the attorney rate. In short, under this first factor, plaintiff objects to: (a) the amount of time Transwest required; (b) the amount of staff Transwest utilized; and (c) the type of work Transwest claims qualifies for a fee award. The court evaluates each objection, in turn, below.

**a.** **Time Required**

Transwest's counsel bears the burden of establishing the reasonableness of the 159 hours they expended. Plaintiff challenges the hours, first, as excessive given the absence of novelty or complexity in this case. *Id.* at 9. Plaintiff alleges, for instance, that "[c]alculating the response deadline to a motion to dismiss does not take 0.90 hours, and it is doubtful that 10.3 hours were reasonably and necessarily spent in one day researching and drafting a reply brief and attending a Rule 26(f) meeting." *Id.* The court agrees with plaintiff that this case—a contract dispute with accompanying tort claims—is straightforward. And the court agrees that Transwest's litigation

of this case also wasn't complicated.[7]  Such a determination weighs against a reasonableness

finding, suggesting the hours billed are excessive and warrant a downward adjustment.

       **b.**    **Staff Utilized**

      Plaintiff also contends the hours piled up quickly because Transwest overstaffed this

case.  Our court has reduced attorneys' fee awards under a KRPC 1.5(a) reasonableness analysis

because a party "overlawyered" a case.  *Kan. Penn Gaming*, 790 F. Supp. 2d at 1317.  In *Kansas*

*Penn Gaming*, the court noted the "instances where several attorneys and support staff were

involved in the review and production of certain documents[,]" and agreed "that the billing

statements reflect[ed] excessive duplication[.]"  *Id.*  Concluding parts of the case "were

overlawyered," the court reduced by 25% the total hours billed.  *Id.*  And in *M.B. v. Howard*, this

court instituted a general reduction of 20% due to the inefficiencies inherent in staffing a case

with 25 attorneys and seven staff members across five distinct organizations.  555 F. Supp. 3d

1047, 1077 (D. Kan. 2021).  As these cases indicate, if indeed Transwest overstaffed, then, the

court may reduce the fees award.  So, did they?

      Plaintiff purports to identify specific indications of Transwest's overstaffing, such as

duplicative work.  "The term duplicative in the context of attorney's fees requests usually refers

to situations where more than the necessary number of lawyers are present for a hearing or

proceeding or when multiple lawyers do the same task."  *Robinson v. City of Edmond*, 160 F.3d

1275, 1285 n.10 (10th Cir. 1998) (internal quotation marks and citation omitted).  In *M.B. v.*

*Howard*, this court recognized that multiple attorneys billing time to discuss or respond to an

---

[7]     The docket reveals that, prior to the motion at issue here, Transwest filed a Motion to Dismiss for Lack of Jurisdiction (Doc. 13), a Notice of Consent to Removal (Doc. 15), two Motions to Appear Pro Hac Vice (Doc. 22; Doc. 23), a Response (Doc. 30) to plaintiff's extension of time motion, and a Reply (Doc. 36) on its Motion to Dismiss.  And Transwest attended a motion hearing (Doc. 31), a status conference (Doc. 40), and a scheduling conference (Doc. 54).  None of this docket activity presents any unique challenge to litigation attorneys.

opposing party's motion for extension of time indicated overstaffing.  555 F. Supp. 3d at 1076–77.  And the court reduced the fee award for duplicative work because "this is not the kind of time that is generally billed to a client."  *Id.* at 1077.

Here, plaintiff—arguing overstaffing—notes that three attorneys entered time for work involving plaintiff's Motion for Extension of Time.  Doc. 50 at 8.  And plaintiff demonstrates that two attorneys billed time to attend the hearing on plaintiff's time extension motion and the Rule 26(f) conference.  *Id.* at 13.  But Transwest responds, asserting it can explain the alleged overstaffing in dispute.  It argues that plaintiff forced Transwest to litigate in Kansas, breaching the contractual provision in the Work Order requiring plaintiff to seek legal recourse in Adams County, Colorado.  Doc. 49-1 at 3 (Def.'s Ex. A).  As a result, Transwest had to bring in more attorneys because it "was required to hire competent local counsel to defend the case."  Doc. 49 at 7.  And Transwest warned plaintiff about the forum selection clause and its intention to seek attorneys' fees and costs if plaintiff litigated in Kansas.  *Id.* at 5.[8]  So, according to Transwest, plaintiff's breach of the contract explains any overstaffing issues with the fee award—and this circumstance mitigates Transwest's duplicative hours.

---

[8]     Transwest reminded plaintiff about the forum selection clause in the Repair Order and warned plaintiff that it intended to seek attorneys' fees for any litigation plaintiff pursued in Kansas in an email dated Sept. 19, 2022.  The email reads:

> As a follow up to our telephone conversation, attached please find the front and back pages of the Work Order executed by your client in connection with the repairs performed by Transwest on the subject truck. As you can see, your client agreed that the exclusive jurisdiction and venue for any action by Skyline against Transwest is Adams County, Colorado.  Likewise, the Work Order provides that the prevailing party in any such action is entitled to recover it[s] reasonable costs, expenses and attorney fees.  Frankly, we have been very successful in enforcing these provisions on behalf of Transwest.  In any event, unless your client agrees to immediately dismiss Transwest from the Kansas action, it intends to file a motion to dismiss and to recover its costs, expenses and attorney fees.  Please advise me of your client's decision as soon as possible.

Doc. 49-2 at 2 (Def.'s Ex. B).

When evaluating the potential for these circumstances to mitigate Transwest's alleged overstaffing, the court finds helpful our Circuit's discussion of consolidation in *Western States*. There, three actions were consolidated rather than tried separately. *Western States*, 834 F.2d at 1549. As a result, the hearings consumed a total of 17 days. *Id.* The lawyer handling the simplest of the three actions objected to the consolidation, arguing that his "case would be drawn out and more expensive if consolidated with the [other] claims[.]" *Id.* The district court consolidated the cases nonetheless. *Id.* When assessing attorneys' fees for the objecting lawyer, the district court "ignored the consolidation and reduced the award to approximate the costs of a single trial on [that one simple] claim." *Id.* Our Circuit found this reduction unnecessarily punitive to the lawyer, depriving him of his contract bargain. *Id.* The Circuit concluded that the lawyer's "billing for the time actually consumed in litigating [his client's] claim in the consolidated trial was not unreasonable." *Id.* And the Circuit noted this conclusion was particularly appropriate given that "the consolidation was at the request of, and for the benefit of, the breaching party." *Id.*

So, too, in this case. Transwest objected to litigating this case in Kansas and communicated as much to plaintiff. And the parties' contract required plaintiff to bring its claims in Colorado. Plaintiff disregarded that contract provision and filed in Kansas—for its own benefit—necessitating Transwest's hiring of local counsel and an increased risk of inefficient work, with more attorneys and paralegals involved. The court concludes, as did the Circuit in *Western States*, that punishing Transwest's counsel for alleged overstaffing in response to plaintiff's decision to disregard the contract would deprive Transwest of its contract bargain. And so the court concludes the circumstances here mitigate—to a certain extent—Transwest's overstaffing.

At the same time, the court also recognizes that some of the alleged overstaffing—such as two attorneys attending the motion hearing and the 26(f) conference where one would've sufficed—were not an overlap of local and out-of-state counsel. Instead, they were both attorneys from the same Colorado firm. Doc. 49-4 at 11–12 (Def.'s Ex. C-1) (recording TJW and KIJ's attendance at motion hearing and Rule 26(f) conference). So, Transwest's explanation tempers, but doesn't nullify, the court's decision to reduce the fees requested for overstaffing.

In sum, the court finds both the issues in this case and Transwest's litigation actions here straightforward. And the court recognizes that Transwest's local-counsel explanation doesn't account for all the overstaffing identified by plaintiff. Keeping in mind the court's primary concern with enforcing the bargained for contractual terms, the court thus determines that this first KRPC 1.5(a) factor recommends only a modest general reduction in the total fees awarded. After the court has completed the later-addressed billed hours and hourly rate adjustments, the court will reduce the total fee award by 5% in light of its conclusions about this first factor.

Before moving to the second KRPC 1.5(a) factor, the court addresses one final issue plaintiff presents under the first factor—non-qualifying work.

### c.    Non-Qualifying Work

Plaintiff argues that Transwest included in its request billed hours that don't qualify for such an award: clerical work, block-billed work, and pro hac vice motion work. The court addresses whether these constitute non-qualifying work for purpose of an attorneys' fees award, next. As before, the court limits its review of alleged non-qualifying work to plaintiff's "particularized objections" without "perus[ing] the itemized statements" more broadly. *Enter. Bank & Tr.*, 2013 WL 1876293, at *21.

i.      Clerical Work

Plaintiff contends that some of Transwest's entries are purely clerical work, and thus Transwest shouldn't have billed them at either a paralegal rate or an attorney rate. *See* Doc. 50 at 12. "Purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1256 (D. Kan. 2017) (internal quotation marks and citation omitted). And so, a party also shouldn't bill "purely clerical or secretarial tasks" at an attorney rate. *Id.* (internal quotation marks and citation omitted). Thus, when determining attorneys' fees, a "court must deduct tasks that amount to filing, organizing files, making copies, printing, ordering file folders, organizing boxes, updating files with correspondence and pleadings, and preparing files for storage." *Id.* (internal quotation marks and citation omitted). But "matters [that] require a legally trained mind" don't qualify as clerical. *Id.* Nor do hours spent reviewing or editing work as part of the legal writing process. *Id.* at 1257.

Here, the court denies fees for certain clerical matters billed by Transwest at an attorney or paralegal rate. Start with the paralegal hours billed. On September 30, 2022, paralegal DGV billed .70 hours for gathering pleadings, forwarding the pleadings to an attorney, and drafting and filing entry of appearance. Doc. 49-4 at 23 (Def.'s Ex. C-1). Collecting pleadings and forwarding them to an attorney is clerical work and the court denies these fees. On the same day, DGV billed 1.0 hour for pulling entire case pleadings filed to date and forwarding the pleadings. *Id.* This, too, is clerical work. On October 6, 2022, DGV billed for reviewing and filing emails for .20 hours—again, clerical. *Id.* at 24. And, finally, on October 7, 2022, DGV billed .50 hours to "[f]inalize and file Consent and download and send same; Review and file emails." *Id.* While finalizing the Consent wasn't clerical work, DGV commingles it—without distinction—with

clerical tasks.  So, the court denies her the full .50 hour.  In total, the court reduces DGV's hours billed by 2.4 hours, as reflected in the Fees Table in the court's conclusion, § V.

Now for the attorney hours billed.  Transwest attorney KIJ billed for setting up dockets[9] for federal case (.20 hours on October 6, 2022) and affixing signatures and filing pro hac vice applications (.90 hours on October 31, 2022).  *Id.* at 7–8 (Def.'s Ex. C-1).  These fall into the clerical category of "filing" as identified in *Fox*.  258 F. Supp. 3d at 1256.  The court thus deducts 1.1 hours from KIJ's total billing hours—again reflected in the Fees Table in § V.  The other attorney tasks plaintiff classifies as clerical, however, don't fit the *Fox* definition.  For example, reviewing local court rules, preparing exhibits, and drafting correspondence about a motion all conceivably "require a legally trained mind[.]"  *Id.*  And proofreading a reply in support of a motion constitutes a legitimate part of the legal writing process.  *Id.*  Plaintiff's objections about purely clerical work thus don't merit any further deductions.

### ii.        Block Billing

Plaintiff also requests a general downward adjustment due to Transwest's block billing entries.  Doc. 50 at 10–11.  "'Block billing' is the practice of lumping multiple tasks into a single entry of time such that the billing entry does not delineate how hours were allotted to specific tasks."  *Fox*, 258 F. Supp. 3d at 1259 (citation omitted).  In *Citizens Utility Ratepayer Board v. Kansas Corporation Commission*, the Kansas Court of Appeals concluded that Kansas law doesn't prohibit block billing necessarily.  284 P.3d 348, 362 (Kan. Ct. App. 2012).  Reaching that conclusion, the Court of Appeals noted that the Tenth Circuit has no rule "mandating reduction or denial of a request for attorney fees if the attorney's records reflect block billing."

---

[9]        The exhibit uses the term "docking" rather than "dockets" when describing the task KIJ completed.  Doc. 49-4 at 7 (Def.'s Ex. C-1).  But the court interprets this as an inconsequential typographical error because our court has no docks, but has many dockets.

*Id*. at 361 (citing *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000)).  Instead, the Tenth Circuit has determined, a discount of the requested hours is warranted if the records submitted do not allow the court to determine how counsel allotted the time to specific tasks and the reasonableness of that time.  *Id.* (affirming district court's refusal to reduce a fee request based on counsel's block billing because billing records sufficed to determine time spent and its reasonableness.).  This court also has granted fee requests that relied on block billed time entries when the submissions permitted the court to determine the overall reasonableness of the fees. *See Dunn & Fenley, LLC v. Diederich*, No. 10-4038, 2012 WL 359753, at *5 (D. Kan. Feb. 2, 2012) (refusing to deny or reduce attorneys' fees requested based on block billing entries because they involved logically related work and did not "camouflage" the work performed).

        Plaintiff doesn't argue that defendant's block billing "camouflages" the work performed. Nor does plaintiff argue the block billed time prevents the court from assessing the reasonableness of the time devoted to particular tasks.  Instead, plaintiff argues that the Tenth Circuit generally discourages block billing, so the court should apply a general reduction to the requested fees.  *See* Doc. 50 at 10.  Plaintiff points to four examples of defendant's block billing. *Id.*  But the court, when reviewing the designated entries, encounters no difficulty determining the reasonableness of the time spent.  Take, for example, one of the allegedly offending entries. Transwest's counsel billed 1.4 hours on September 27, 2022, for the following tasks:

> Review and revise Motion to Dismiss; teleconference with Ms. Jaramillo regarding same; review and respond to email correspondence regarding same; review draft Motion of Removal to US District Court; teleconference with Mr. Townsley regarding same; prepare language for Notice of Removal re Jurisdiction; teleconference with Ms. Jaramillo regarding same.

Doc. 50 at 10–11; Doc. 49-4 at 4 (Def.'s Ex. C-1).  Although the attorney here lists multiple tasks—and the court could classify the entry as block billing—it doesn't struggle to identify the

tasks performed or the reasonableness of the time. All the tasks logically relate to different aspects of the present case. While shorter, more targeted time entries are preferable, the court declines to reduce the fee award on this basis, nor does Kansas law or Tenth Circuit precedent require the court to do so.

### iii.      Time Spent on the Pro Hac Vice Motions

Finally, plaintiff contends that pro hac vice motion work doesn't qualify for an attorney rate. Transwest seeks fees totaling 3.8 attorney hours for two pro hac vice motions to the court.[10] Doc. 49-4 at 8 (Def.'s Ex. C-1). Our court and others have held that time devoted to preparing pro hac vice motions is compensable, but only at a paralegal rate. *See Animal Legal Def. Fund v. Kelly*, No. 18-2657, 2020 WL 4000905, at *5 (D. Kan. July 15, 2020); *see also Ellison v. GAB Robins, Inc.*, No. CIV 02-127, 2006 WL 8444544, at *15 (D.N.M. Jan. 26, 2006) (applying § 1988(b)'s framework for awarding attorneys' fees in Title VII case and noting pro hac vice motions are "a standard, straightforward pleading . . . . [T]he preliminary draft is likely part of any lawyer's 'boilerplate' forms, or is generally prepared by a paralegal"). Embracing this approach, the court awards attorneys' fees for preparing pro hac vice motions, but at a paralegal rate.

Doing the numbers, the court notes that it previously denied .90 hours submitted by KIJ for the pro hac vice motions because it determined affixing signatures and filing the motions amounted to clerical work. So, the court doesn't consider those entries again here. Still at issue from the plaintiff's Response are the following entries:

---

[10]      Plaintiff's Response asserts that "Transwest seeks fees at varying attorney hourly rates for 7.1 hours devoted to two pro hac vice motions[.]" Doc. 50 at 11. But this court has only found 3.8 hours of work from Transwest's log. Doc. 49-4 at 8, 11, 25 (Def.'s Ex. C-1). And plaintiff only identifies eight entries that add up to 3.5 hours. *Id.* Therefore, the court's analysis proceeds on the premise that Transwest's attorneys devoted just 3.8 hours to the two motions.

| Date | Attorney | Task | Hours Billed |
|------|----------|------|--------------|
| 10/27/2022 | KIJ | Pro Hac Vice Motion for Tanner and I | .90 |
| 10/28/2022 | KIJ | Drafting Motion to Enter Pro Hac Vice | .70 |
| 10/31/2022 | JRC | Discussion with Mr. Walls re:  Motion to Dismiss and Motion for Pro Hac Vice (.10); discussion with Ms. Jaramillo re:  same (.10); review and respond to email correspondence re:  same (.20) | .40 |
| 10/31/2022 | TJW | Review and revise Motion for PVH; Application; and Affidavit supporting PHV admission | .20 |
| 11/01/2022 | JRC | Review and respond to email correspondence regarding Motion for Pro Hac Vice Admission; attend to matters regarding same | .20 |
| 11/02/2022 | JRC | Review and respond to email correspondence regarding Pro Hac Vice Admission and Court Order and documents regarding same. | .20 |

Doc. 50 at 12–13; Doc. 49-4 at 8, 11 (Def.'s Ex. C-1).  And the court found one additional entry:

| Date | Attorney | Task | Hours Billed |
|------|----------|------|--------------|
| 10/31/2022 | MTC | Messages with lead counsel to coordinate pro hac vice admissions | .30 |

Doc. 49-4 at 25 (Def.'s Ex. C-1).

These entries constitute work billed at an attorney rate that is only compensable at a paralegal rate.  *Animal Legal Def. Fund*, 2020 WL 4000905, at *5.  The court thus deducts from each of the attorneys' billed hours the following:  1.6 hours from KIJ, .80 hours from JRC, .20 hours from TJW, and .30 hours from MTC.  In total, the court deducts 2.9 hours at varying attorneys' rates.  The court records these deductions in the Fees Table, captured in the court's conclusion, § V.  Then, the court adds 2.9 hours at the paralegal rate.  Also, below, the court explains that it awards all paralegal hours at the same rate.  So, the court adds these 2.9 hours to the first paralegal listed in the Fees Table, DS.  Having accounted for the reduced rate for pro hac vice motions, the court has completed its review of plaintiff's objections under the first KRPC

1.5(a) factor.  The court moves next to the second factor used to determine reasonableness of fees:  "(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer[.]"  KRPC 1.5(a)(2).

### 2.   Precluded Other Employment by the Lawyer

In considering the second reasonableness factor, the court finds no basis to conclude the legal work on this case precluded any involved attorneys from other employment.  The court determined above that this is a straightforward case.  And the court recognizes the number of attorneys available to put in hours on this case.  In *Wittig*, the Kansas Court of Appeals concluded that the engagement at issue there precluded its attorneys from working on other matters because "two jury trials were conducted and a third trial was set."  235 P.3d at 530.  No such trial demands exist here.  Nor are there any other extenuating circumstances.  The court thus concludes that the demands of Transwest's defense didn't preclude any attorneys from other employment.  With that, the court holds the second factor doesn't contribute to a finding of reasonableness.  On to the third KRPC 1.5(a) factor:  "(3) the fee customarily charged in the locality for similar legal services[.]"

### 3.   Fee Customarily Charged in the Locality

Assessing this third factor, the court first must determine the relevant locality before it can compare hourly rates.  Transwest's counsel argues that the court should compare their attorneys' fees to those in the Colorado and Denver metropolitan area for those attorneys situated there, and the Kansas City metropolitan area for local counsel.  Doc. 49 at 7–8.  But the court disagrees.  The controlling legal standard provides that a court, when determining an appropriate hourly rate,

> should establish, from the information provided to it and from its own analysis of
> the level of performance and skill of each lawyer whose work is to be compensated,

24

> a billing rate for each lawyer based upon the norm for comparable private firm
> lawyers in the area in which the court sits, calculated as of the time the court awards
> fees.

*Fox*, 258 F. Supp. 3d at 1263–64 (citation and internal quotation marks omitted).  That is, the

relevant market is the place where the litigation takes place.  *Erickson v. City of Topeka, Kan.*,

239 F. Supp. 2d 1202, 1209 (D. Kan. 2002); *see also Wittig*, 235 P.3d at 530 (using the greater

Kansas City metropolitan area, not the firm's location in Washington, D.C., as the relevant

locality).  Therefore, the relevant locality here is Kansas City, Kansas.

Having determined the appropriate locality, the court next must determine what fees are

customarily charged by attorneys in that locality.  This court's cases assessing the Kansas City

market have found hourly rates between $175 to $625 reasonable based on the attorney's

litigation experience.  *See, e.g.*, *Lawson v. Spirit AeroSystems, Inc*., No. 18-1100, 2020 WL

6343292, at *16 (D. Kan. Oct. 29, 2020) (finding reasonable rates of $625 per hour for partner

with 27 years' experience, $425 per hour for counsel with 13 years' experience, and $350 per

hour for associate with seven years' experience because they were consistent with top-tier

employment litigation rates in Kansas City), *aff'd*, No. 18-1100, 2020 WL 6939752 (D. Kan.

Nov. 24, 2020)[11]; *Animal Legal Def. Fund*, 2020 WL 4000905, at *9 (finding hourly rates

between $500, for most experienced attorney, to $250 reasonable); *Ross v. Jenkins*, 325 F. Supp.

3d 1141, 1181 (D. Kan. 2018) (concluding $225 a reasonable rate for attorneys with experience

of four years or less); *Fox*, 258 F. Supp. 3d at 1271 (finding hourly rates of $400 and $375

reasonable for attorneys with 17 and 15 years of experience in a Title VII and Title IX case in

---

[11]    Opposing counsel in *Lawson* didn't challenge the reasonableness of these rates and didn't provide
evidence contradicting them.  *Lawson v. Spirit AeroSystems, Inc*., No. 18-1100, 2020 WL 6343292, at
*17 (D. Kan. Oct. 29, 2020) (finding proposed rates reasonable "given the lack of evidence to contradict
Spirit's record about the reasonableness of its requested rates"), *aff'd*, No. 18-1100-EFM, 2020 WL
6939752 (D. Kan. Nov. 24, 2020).

Kansas City Metropolitan area); *Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-2311, 2015 WL 4920292, at *10 (D. Kan. Aug. 18, 2015) (finding hourly rates ranging from $180 to $425 reasonable, depending on each attorneys' level of experience, in an FLSA case for attorneys at a law firm based in Overland Park, Kansas); *Seamands v. Sears Holding Corp*., No. 09-2054, 2011 WL 884391, at *14–16 (D. Kan. Mar. 11, 2011) (finding the following hourly rates reasonable in a class action lawsuit involving unpaid sales incentive compensation:  $400 per hour for a lawyer with more than 30 years' experience, $290 per hour for lawyers with more than 20 years' experience, $270 for a partner with 11 years' experience, and $175 for associates with "lesser experience" for attorneys based in Kansas City, Missouri).

Here, plaintiff generally states that Transwest's attorney's fees are too high because the relevant market area is Kansas.  *See* Doc. 50 at 9.  Plaintiff then specifies that attorney KIJ's rate of $295 is unreasonable and should be reduced to $180 for her lack of experience because she began practicing law in 2021.  *Id.*  Plaintiff doesn't specifically target any other attorneys' rates as too high.  The court looks at the most recent case law—which best embodies the current market—and considers the rates those cases utilized for relatively inexperienced associates.  And the court finds that $225 an hour is a reasonable rate for KIJ—an associate with just over one year of experience at the time KIJ accrued the fees.  *See Lawson*, 2020 WL 6343292, at *16 (finding $350 a reasonable rate for an associate with *seven* years' experience); *Ross*, 325 F. Supp. 3d at 1181 (concluding attorneys with four years or less experience reasonably may charge $225 an hour).  This reduces her rate from $295 to $225 an hour.  The court also finds that the attorneys' rates—ranging from $310–$405 for partners—are commensurate with those our court previously has held reasonable.  Doc. 49-3 at 3 (Walls Decl. ¶ 5); *see also Lawson*, 2020 WL 6343292, at *16; *Animal Legal Def. Fund*, 2020 WL 4000905, at *9.  Also, the partner with the

most experience, James Cage (JRC), already reduced his rate because of his long-standing professional relationship with Transwest.  Doc. 49-3 at 2 (Walls Decl. ¶ 4).  So, the court leaves all other attorneys' rates undisturbed.

Next, the court must determine a reasonable fee for paralegals in the Kansas City Metropolitan Area.  Recent rulings by our court and the Western District of Missouri will not support a rate of $200 an hour for paralegals.  *Animal Legal Def. Fund*, 2020 WL 4000905, at *9 (finding hourly rate of $125 per hour reasonable for paralegals and law students); *see also M.B. v. Tidball*, No. 2:17-cv-4102, 2020 WL 1666159, at *13 (W.D. Mo. Apr. 3, 2020) (holding $150 per hour reasonable for paralegals).

Here plaintiff targets Transwest's paralegal rates of $260 and $200 as inflated.  The court finds a rate of $150 per hour is reasonable for paralegals.  *See M.B. v. Tidball*, 2020 WL 1666159, at *13.  This reduces DS's rate from $260 to $150, DV's from $200 to $150, and RLC's from $260 to $150.  The court reflects the attorney and paralegal hourly rate changes in its Fees Table in the concluding section, § V.

Next up is KRPC 1.5(a)'s fourth factor:  "(4) the amount involved and the results obtained[.]"  The court addresses factor four below.

### 4.    Amount Involved; Results Obtained

Given the procedural posture of this case, this factor doesn't influence the court's analysis.  Plaintiff's Petition (Doc. 1-1) pleaded a payment for repair work to another defendant, Truck Center, in the amount of $11,750.55.  Doc. 1-1 at 4 (Pet. ¶ 13).  And plaintiff pleaded that the costs of this action were "in excess of $75,000.00."  *Id.* at 10.  But the court dismissed Transwest for lack of personal jurisdiction (Doc. 43), so the amount involved and results that the parties might have secured remain as unknowns.  Moving on, factor five is similarly unhelpful.

### 5.  Time Limitations

Factor five reads: "(5) the time limitations imposed by the client or by the circumstances." KRPC 1.5(a)(5).  The briefing provides no insight about time limitations imposed by these clients.  And the docket reveals only those time limitations that inhere in any case based upon our local rules, and the accompanying motions to extend said limits.  The court thus disregards this fifth factor in its reasonableness determination and moves on to the sixth factor:  "(6) the nature and length of the professional relationship with the client."

### 6.  Professional Relationship with Client

The court determines this sixth factor tips the scale in favor of the requested fees' reasonableness.  James R. Cage (JRC) has been practicing law since 1980.  Doc. 49-3 at 2 (Walls Decl. ¶ 4).  He is a partner at the law firm of Moye White and he identifies an extensive list of concentration areas, credentials, and affiliations.  Doc. 49-5 at 2–3 (Def.'s Ex. C-2).  And he has represented Transwest and its affiliates for more than 21 years.  Doc. 49-3 at 2 (Walls Decl. ¶ 4).  Such a resume easily could secure a high hourly rate.  However, JRC "performed work on the file at the initiation of the lawsuit at a reduced hourly rate for his level of experience due to his long standing relationship with the client." *Id.*  Such an accommodation—though made for the benefit of his client and to encourage an ongoing professional relationship—suggests a level of reasonableness in the fees Moye White billed.  Given the time and effort expended over the years to establish and maintain a relationship with Transwest, Moye White and JRC likely wouldn't jeopardize that relationship with inflated or unfounded fees here.  So, the court finds this sixth factor commends a finding of reasonableness.  The seventh factor, reviewed below, also scrutinizes the attorneys on this case.  KRPC 1.5(a) explains that factor like this: "(7) the

experience, reputation, and ability of the lawyer or lawyers performing the services[.]"  The
court addresses it next.

### 7.      Experience, Reputation, Ability of the Lawyer

To speak to this seventh reasonableness factor, Transwest's counsel submitted website
biographies and a declaration reporting the experience of the primary Moye White attorneys
consulted on this case.  The lead attorney, Tanner J. Walls (TJW), has practiced in Colorado
since 2009, is licensed to practice in two other states, and engages exclusively in civil litigation.
Doc. 49-3 at 2 (Walls Decl. ¶¶ 2–3).  He serves as vice-chair of the litigation section at Moye
White and his website biography details multiple representative matters where he occupied the
lead trial attorney or co-lead trial attorney position in breach of contract, negligence, and
malpractice cases.  Doc. 49-6 at 3–4 (Def.'s Ex. C-3).  His colleague, JRC, has a resume that
stretches back to 1980, as discussed in the previous section.  In addition to the length of his
practice, JRC's "AV" Preeminent rating—Martindale-Hubbell's highest rating for attorneys—
demonstrates JRC's "legal ability and ethical standards."  Doc. 49-5 at 2 (Def.'s Ex. C-2).  Both
TJW and JRC are partners at Moye White law firm in Denver, Colorado.  Doc. 49-3 at 3 (Walls
Decl. ¶ 5).  One other Moye White partner, Joseph W. Mark (JWM), contributed a modest 1.2
hours to this case.  Doc. 49-4 at 3, 5 (Def.'s Ex. C-1).  The court has no information about
JWM's qualifications apart from his status as partner.  The only Moye White lawyer on this case
who doesn't have partner status is associate Karla I. Jaramillo (KIJ).  KIJ—who alone submitted
half of the billed hours (80.3 hours of the total 159 hours)—has practiced law since 2021.  Doc.
49-3 at 2 (Walls Decl. ¶ 4).  She focuses her practice on civil and commercial litigation and has
an LL.M. in European Business Law.  Doc. 49-7 at 2 (Def.'s Ex. C-4).

Local counsel, Michael Crabb (MTC) of Kuckelman Torline Kirkland, Inc., submitted just 10.4 hours out of the total 159 hours.  Doc. 49-3 at 3 (Walls Decl. ¶ 5); Doc. 49-4 at 22–26 (Def.'s Ex. C-1).  MTC didn't provide the court with information about his experience or credentials.  The hours billed chart indicates, however, that MTC is a partner.  Doc. 49-3 at 3 (Walls Decl. ¶ 5).

The court concludes that the experience, reputation, and ability of the Moye White attorneys weighs in favor of finding the requested fees reasonable.  While the associate performing most of the legwork for this case has but modest experience, the lead attorney has practiced law for 15 years and spent the entirety of his career in civil litigation matters like this one.  Coupled with the consultations provided by an even more experienced attorney (JRC), the court finds this experience suffices to suggest reasonableness.  And plaintiff has provided no indication that the attorneys' reputations are compromised in any way.  So, the court puts another tick in the reasonable column and moves on to the final KRPC 1.5(a) factor:  "(8) whether the fee is fixed or contingent."

### 8.      Fixed or Contingent Fee

The fee in this case is fixed, not contingent.  In some circumstances, a contingent fee arrangement may produce an excessive and unreasonable fee award if it disproportionately represents the amount of time and effort required by counsel in the case.  *See, e.g.*, *Bergeson v. Dilworth*, 875 F. Supp. 733, 739–40 (D. Kan. 1995) (reducing award under contingent fee contract to compensate counsel adequately for the time and efforts involved in the case).  That concern doesn't present itself here because defendant's counsel's fee is fixed.  So, the court adds a final tick to the reasonable column.

In sum, the court finds that—after it completes adjustments required under the first and third factors—the KRPC 1.5(a) factors favor an overall finding of reasonableness. The first factor advises the court to consider "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly." KRPC 1.5(a)(1). Under the first factor, the court determined that the case's issues were not novel or difficult and that the record contained some indication of overstaffing. So, the court concluded a general reduction of 5% is warranted. The court also completed specific adjustments for clerical work and pro hac vice motions under factor one. Then, the court adjusted hourly rates under the third factor to conform to the Kansas City locality customs. With these first and third factor adjustments completed, the KRPC 1.5(a) factors weigh in favor of reasonableness. Factors four and five don't merit the court's consideration under the circumstances of this case. And factors six, seven, and eight all favor a finding of reasonableness. While factor two suggests the attorneys weren't precluded from other employment, this factor alone doesn't suffice to overcome a finding of reasonableness. The court thus concludes that, after the adjustments outlined above, Transwest's request represents a reasonable fee award for the tasks required in this lawsuit. And the court awards Transwest's counsel attorneys' fees in sum of $43,280.10, a total the court summarizes in the court's Fees Table, § V., below. But, first, it must address Transwest's request for its costs.

## IV.   Taxable Costs under Fed. R. Civ. P. 54(d)(1)

Transwest asks the court for "the right to file its Bill of Costs as the prevailing party." Doc. 49 at 9. Fed. R. Civ. P. 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." "Whether to grant costs to a prevailing party is within the district 'court's

sound discretion,' but 'Rule 54 creates a presumption that the district court will' do so." *Allen v. Lang*, 738 F. App'x 934, 944 (10th Cir. 2018) (quoting *Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1190 (10th Cir. 2004)).  Here, the court has determined already, in § II.C., that Transwest is not a prevailing party because dismissal for lack of personal jurisdiction is not a judgment on the merits. *Murray*, 2011 WL 2601528, at *4.  Indeed, the Supreme Court has explained "that the term 'prevailing party' is a 'legal term of art' defined as 'a party in whose favor a judgment is rendered, regardless of the amount of damages awarded.'" *Allen*, 738 F.App'x at 944 (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001)) (further citation omitted).  We don't have one of those here.  So, the court denies Transwest's request for costs because Transwest is not a prevailing party under Rule 54(d)(1).

## V.    Conclusion

The court awards Transwest attorneys' fees under the parties' contractual fee-shifting provision.  The court assesses Transwest's fee request under Kansas law's reasonableness factors, as outlined in KRPC 1.5(a).  After specific modifications to hours billed and hourly rates under factors (1) and (3), and a general reduction under factor (1), the court determines the remaining award is reasonable.  And so, the court awards Transwest $43,280.10 in attorneys' fees under the contract.  Finally, the court denies Transwest costs because Transwest isn't a prevailing party.

**Fees Table**

| Timekeeper | Title / Year Began Practicing Law | Requested Hours Billed | Adjusted Hours Billed | Adjusted Rate | Total Charge |
|---|---|---|---|---|---|
| James R. Cage (JRC) | Partner / 1980 | 21.6 | (-.8) = 20.8 | $310 | $  6,448.00 |
| Tanner J. Walls (TJW) | Partner / 2009 | 39.6 | (-.2) = 39.4 | $405 | $15,957.00 |
| Michael Crabb (MTC) | Partner / not provided | 10.4 | (-.3) = 10.1 | $400 | $  4,040.00 |
| Joseph W. Mark (JWM) | Partner / not provided | 1.2 | N/A | $365 | $     438.00 |
| Karla I. Jaramillo (KIJ) | Associate / 2021 | 80.3 | (-1.1) (-1.6) = 77.6 | $225 (reduced) | $17,460.00 |
| DeAnne Stoneking (DS) | Paralegal | 3.7 | (+ 2.9) = 6.6 | $150 (reduced) | $     990.00 |
| Deborah Vandervoort (DGV) | Paralegal | 2.4 | (-2.4) = 0 | $150 (reduced) | $         0 |
| Rachel L. Cotner (RLC) | Paralegal | 1.5 | N/A | $150 (reduced) | $     225.00 |
| TOTAL before general reduction: | | | | | $45,558.00 |
| TOTAL after 5% general reduction: | | | | | $43,280.10 |

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Transwest's

Motion for Attorneys' Fees and Costs (Doc. 49) is granted in part and denied in part.  The court

awards defendant Transwest's attorneys' fees in the amount of $43,280.10.  And the court denies

Transwest's request for costs under Rule 54(d)(1).

**IT IS SO ORDERED.**

**Dated this 26th day of March, 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**

**Daniel D. Crabtree**

**United States District Judge**
